Application of Charles **BOYD**
For a Writ of Habeas Corpus.
Civ. A. No. 2674.

United States District Court
M. D. Tennessee,
Nashville Division.
July 10, 1959.

John J. Hooker Jr., and Henry W. Hooker, of Hooker & Hooker, Nashville, Tenn., for petitioner.

Henry C. Foutch, Asst. Atty. Gen., of Tennessee, for respondent.

WILLIAM E. MILLER, District Judge.

This is an application by the petitioner, Charles Boyd, for the writ of habeas corpus to obtain his release from confinement in the Tennessee Penitentiary upon the ground that he is presently serving a sentence of life imprisonment as a habitual criminal imposed under the original Habitual Criminal Act of Tennessee enacted in 1939 (Chapter 22, Tennessee Public Acts of 1939), and that such Act is in contravention of the due process clause of the Fourteenth Amendment to the Federal Constitution and therefore void. It is insisted that the Act itself being void, the petitioner's conviction and sentence under the Act are also void and must be so declared.

The petitioner was tried in the Criminal Court of Shelby County in 1940 under an indictment charging him with robbery, the indictment also containing this further allegation:

"And the Grand Jurors, aforesaid, upon their oath, do further present that Charles Boyd is a habitual criminal in that he has been convicted of three crimes, each of said crimes being of a higher grade than petit larceny, and two of same being infamous crimes, said convictions being for separate offenses committed at different times and on separate occasions."

Under the indictment the petitioner was found guilty and was given a sentence on the robbery charge and a sentence of life imprisonment on the charge of being a habitual criminal. The Supreme Court of Tennessee, on appeal, affirmed the judgment of conviction. Having completed the service of his sentence for robbery, the petitioner, following the decision of Judge Davies of this Court in Rhea v. Edwards, D.C., 136 F.Supp. 671, affirmed by the Court of Appeals, 6 Cir., 238 F.2d 850, certiorari denied by the Supreme Court, filed his petition for the writ of habeas corpus in Division II of the Criminal Court of Davidson County at Nashville, alleging that he was illegally restrained of his liberty, in that Chapter 22 of the Public Acts of Tennessee of 1939 was unconstitutional, and relying upon the ruling in the Rhea case, supra, and other points and authorities. After a hearing in that court, Judge Charles Gilbert filed a lengthy and carefully reasoned opinion (a copy of which is made a part of the record herein) holding that the Habitual Criminal Act as originally enacted in 1939 was unconstitutional and that the petitioner was entitled to be released from custody. It was pointed out in the opinion that the Act specifically authorized a conviction upon a charge of being a habitual criminal without notice in the indictment or any notice whatever prior to trial, that such provision could not be elided from the Act under the severability clause because it was an essential part of the enactment itself, and that such provision rendered the Act unconstitutional because it constituted a denial of due process of law under the Fourteenth Amendment. It was further held by Judge Gilbert that even if the provision of the Act which dispensed with the necessity of notice could be elided, the Act would still be void because, as so revised, it would authorize only the type of notice to a defendant which was actually given in the case of Boyd, i. e., an allegation in the indictment simply charging in general terms that the defendant was a habitual criminal as defined in the Act without supplying any details or facts relative to the prior convictions involved, including the court in which the conviction was rendered, the type of offense for which convicted, etc.

Upon appeal, Judge Gilbert's decision was reversed by the Supreme Court of Tennessee. Bomar v. State ex rel. Boyd, 312 S.W.2d 174. That court undertook to distinguish the Rhea case upon the ground that no notice of any kind was given to Rhea prior to trial of the habit-

ual criminal charge, and that the court had not considered the severability clause contained in the Act. It then proceeded to find, contrary to the conclusion reached by Judge Gilbert, that the provision of the Act dispensing with the necessity of notice to a defendant that he was charged with being a habitual criminal, though void as held in the Rhea case, could be elided from the Act and the remainder of the Act saved from a declaration of unconstitutionality. It was held that with such elision effected, the Act did provide for notice in the indictment that the defendant was charged with being a habitual criminal. It was the apparent conclusion of the Supreme Court that the Act in this form would meet the requirements of due process of law. With respect to the contention that the indictment in the case of Boyd did not contain a sufficient notice in that it failed to set forth the facts and circumstances pertaining to the prior convictions to be relied upon at the trial, the Supreme Court of Tennessee reasoned that if it should be assumed that the indictment was faulty for failure to allege the facts of the prior convictions, as held in many jurisdictions, nevertheless that such failure merely made the indictment too meager rather than void, and that a defendant's remedy in such situation was to move to have the indictment quashed for insufficiency. It was said that this procedure would result in referring the indictment back to the Grand Jury with the defendant being held in the meantime. It was therefore ruled by the Supreme Court that since the defendant Boyd in his trial did not move to quash the indictment, he necessarily waived the insufficiency of the indictment in this respect and could not now rely upon it.

After the adverse decision of the Supreme Court of Tennessee the petitioner filed his habeas corpus petition in this Court based upon practically the same grounds as set forth in his original petition in the state court. However, on July 2, 1958, this Court entered its order dismissing the petition for the reason that it was premature since the petitioner had not exhausted his remedies by seeking a review of the decision of the Supreme Court of Tennessee by the Supreme Court of the United States. Thereafter the petitioner filed with the Supreme Court of the United States his petition for the writ of certiorari seeking a review of the decision of the Supreme Court of Tennessee. Such petition for certiorari was denied by the Supreme Court of the United States on December 15, 1958, 358 U.S. 921, 79 S.Ct. 293, 3 L.Ed.2d 240. On January 5, 1959, the petitioner filed the present petition in this Court again seeking his release from custody on the ground that he had been convicted as a habitual criminal under an unconstitutional act.

The Court has carefully examined the opinion in Rhea v. Edwards, supra, dealing with the constitutionality of the original Habitual Criminal Act of Tennessee and holding it void upon the facts there presented, the exhaustive opinion of Judge Gilbert and the opinion of the Supreme Court of Tennessee upon the application of the petitioner for habeas corpus, in addition to other authorities cited in such opinions and in the briefs of counsel. From such review and study the Court is compelled to the conclusion that the petitioner was convicted and sentenced as a habitual criminal under a void Act that cannot be saved by application of the doctrine of elision.

It can be plausibly argued that the construction of the Act to determine whether the severability clause is applicable is essentially a state question and that a federal court having jurisdiction by virtue of a federal question is bound by the ruling of the highest court of the state upon a question of state law. This is no doubt the general rule, and the Court is inclined to believe that it is applicable in the present case insofar as the severability question is concerned, and that this Court must accept the premise that the Act is capable of elision as a matter of statutory construction in keeping with the ruling of the Tennessee Supreme Court.

■ But the question whether the Act after the elision is made is a valid enactment under the Fourteenth Amendment is of course a federal question with the result that this Court is not bound by the decision of the Supreme Court of Tennessee holding the residue of the Act valid after elision of the provision authorizing conviction on the habitual criminal charge without pre-trial notice. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. It will be recalled that the Supreme Court of Tennessee held that the Act, after the provision for dispensing with notice was elided, provided for notice of a charge of habitual criminality in the indictment or presentment and was therefore valid under the provisions of the Fourteenth Amendment. It then went ahead to hold further that the indictment in the case of Boyd, although it simply charged him with being a habitual criminal as defined in the Act without giving any facts pertaining to prior convictions, was simply a defective indictment as distinguished from a void one, and therefore capable of being cured by motion to quash. Absent such motion it was held that the defect in the indictment was waived by a defendant going to trial.

■ This Court finds itself unable to concur in this reasoning. Apparently that court in its opinion dealt with the question as being merely one of a defective indictment. But the real question in this case is not whether the indictment is defective but whether the statute under which the indictment was returned is void. It is true that if an indictment is merely insufficient in some respects or too meager, it may not be void and may be cured upon a motion to quash by recommittal to the Grand Jury. But such a remedy is not available where the indictment itself is drawn under a void statute. If the statute itself is void it must necessarily follow that all proceedings under the statute are also void, including the indictment, the conviction, and the sentence imposed by the court.

In this case the indictment, charging the defendant in general terms with being a habitual criminal, was drawn in strict compliance with the Act itself. It gave the only type of notice to the defendant which was sanctioned by the Act. It simply charged that the defendant was a habitual criminal without any further details and this is precisely what the Act provided could be done.

Thus, Section 4 of the Act provided that a defendant, being charged with one of the enumerated felonies, "may also be charged therein with being a habitual criminal, as defined in Section 1 hereof, or may be charged only with the commission of such felony, but in either case, shall upon conviction, be sentenced and punished as a habitual criminal, as in this Act provided".

Section 5, pertaining to the indictment or presentment, provides that an indictment or presentment which charges a defendant with being a habitual criminal, as defined in Section 1, with the commission of any one of the enumerated felonies "may or may not also charge that he is such habitual criminal, but in either case the felony charge shall be deemed and construed as necessarily including and charging such person with being an habitual criminal, and no such indictment or presentment shall be subject to any objection for failure to specifically include a charge that such person is an habitual criminal."

Section 1 of the Act defines a habitual criminal generally as a person who has been three times convicted under the laws of Tennessee or any other state of certain felonies. Section 2 provides that a person upon being convicted of being a habitual criminal shall be sentenced to life imprisonment and shall not be eligible for parole. Section 7 provides that the record or records of prior convictions shall be admissible in evidence as proof that such person is in fact a habitual criminal as defined in the Act, and that "a judgment of conviction of any person in this State, or any other state, country or territory, under the same name as that by which such person is charged with the commission, or attempt at commission, of a felony under the terms of this

Act, shall be prima facie evidence that the identity of such person is the same."

It is thus seen that even if the provisions of the Act dispensing with notice as set forth in Sections 4 and 5 are elided, as held by the Supreme Court of Tennessee, the Act in its revised and amended form would still make authorization for proceeding against a defendant as a habitual criminal only upon a general charge in the indictment that he was such habitual criminal as defined in the Act, as set forth in the indictment in the present case, without supplying any details of time, place, or circumstances in respect to the prior convictions involved. The result is that in accordance with the terms of the Act a defendant is to be charged with being a habitual criminal only in the most general terms, and is given no notice of the specific prior convictions to be relied upon until the records of such prior convictions are offered in evidence by the prosecution. If such records of prior convictions contain a name identical to that of the defendant on trial, such identity of names constitutes prima facie evidence that the defendant is the same person as the person previously convicted, whether the conviction was in a court of Tennessee or any other state of the Union, or any territory or foreign country. A defendant thus comes to trial with prima facie evidence against him which he has no opportunity to refute other than to take the witness stand and to make a denial if in fact he is not the person involved in the prior conviction. He is afforded no opportunity to buttress his denial by other evidence.

The consequence of a defendant's inability to refute the accuracy or correctness of the former convictions so offered by the prosecution is a judgment of life imprisonment without possibility of parole. Yet this is the procedure that is specifically sanctioned and authorized by the Act itself as originally enacted by the Tennessee legislature even after the provision dispensing with notice is eliminated under the doctrine of elision. The Court has no hesitation in holding that such procedure fails to meet the fundamental requirement of the due process clause of a fair and reasonable notice of the charge on which a defendant is to be tried.

It is no answer to say that a defendant could move to quash the indictment if he is not satisfied with the notice, for the fact remains that a notice in this form contained in the indictment is in exact accordance with the Act itself and therefore a motion to quash would not lie. For, the insufficient notice being the notice prescribed by the Act, the Act itself must fall and any indictment under it must also fall.

Neither is it an answer to say that the Habitual Criminal Act does not create a separate offense but merely defines a status. While such dichotomy may be useful for certain purposes, it is of no significance when it is the duty of the Court to measure and evaluate a defendant's fundamental rights under the due process clause of the Fourteenth Amendment. That clause is concerned not with legal fictions but with actualities. It appears to the Court the sheerest verbalism to say that a defendant convicted of being a habitual criminal is not convicted of an offense but merely fixed with a certain status, when the mandatory result of such conviction is life imprisonment without hope of parole.

It is significant to observe that in 1950 the original Habitual Criminal Act of Tennessee was amended so as to provide among other things that a defendant charged with being a habitual criminal shall be entitled to demand and receive prior to trial upon his motion a full statement "setting forth the nature of each such felony and the time and place of each such prior conviction." Thus, the legislature of Tennessee itself apparently construed the original Act as being defective in not providing for sufficient notice and by subsequent legislation cured the defect by specifically requiring that a defendant be afforded the opportunity of having notice prior to trial of the essential facts pertaining to any prior convictions to be relied upon.

**118**

The same section of the Act provides that a defendant cannot be put to trial without his consent within 20 days from and after the time when such statement is supplied to him or his counsel of record. Tennessee Code Annotated, Sec. 402803.

■ Being of the opinion that the original Habitual Criminal Act of Tennessee, Chapter 22 of the Public Acts of 1939, is void in its entirety, and that the indictment, conviction, and sentence in the case of the petitioner under said statute were also void, the Court finds and holds that the petitioner is entitled to be discharged from custody by the Warden of the Tennessee Penitentiary.

An order to that effect will be prepared and submitted to the Court.