STATE of Tennessee, Plaintiff-in-Error,

v.

Vivian Troy COOK, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Nov. 17, 1971.

Certiorari Denied by Supreme Court
April 3, 1972.

David M. Pack, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, Guy R. Dotson, Dist. Atty. Gen., Murfreesboro, for plaintiff in error.

John Mitchell, Jr., Murfreesboro, for defendant in error.

OLIVER, Judge.

## OPINION

Vivian Troy Cook, the petitioner below, indigent and represented in this proceeding by court-appointed counsel, an inmate of the State Penitentiary where he is serving a second degree murder sentence of 10 to 15 years and a concurrent sentence of five to 10 years for robbery adjudged upon his conviction of those crimes in the Circuit Court of Cannon County where he was represented by counsel retained by his family, filed in that court a petition and an amended petition under the Post-Conviction Procedure Act.

Concluding an evidentiary hearing, the duly designated chancellor who heard this petition reversed as void the petitioner's robbery conviction and quashed that indictment, and granted him the right to file a motion for a new trial in his second degree murder case and a delayed appeal in the event his new trial motion should be overruled.

Upon appeal by the State from that judgment, this Court reversed and remanded for a rehearing on this post-conviction petition, for the reason that the purported Bill of Exceptions reflecting the evidence adduced at the evidentiary hearing was not signed and authenticated by the chancellor and did not appear to have been filed with the clerk of the trial court and could not be considered.

Pursuant to a subsequent motion by the petitioner, this Court entered an order, by authority of Chapter 475 of the Public Acts of 1970 (amending TCA § 27–111), directing that court to take immediate action to cause a Bill of Exceptions reflecting the evidentiary hearing to be prepared and duly authenticated and filed with the clerk of the trial court for transmission to the clerk of this Court for filing in this case. That order having been complied with, this case is again before us for consideration of the petition upon its merits and the State's appeal.

In his original and amended petitions, Cook charged that the trial judge committed prejudicial error in failing to grant him a change of venue because of hostile public feeling and adverse publicity by the news media, and he pursued that insistence in his testimony. But that issue is foreclosed. In the first place, according to his and his trial counsel's testimony, he made no motion for a change of venue. Moreover, the law is settled that a motion for a change of venue is addressed to the sound discretion of the trial judge. Wheeler v. State, 220 Tenn. 155, 415 S.W. 2d 121; Swain v. State, 219 Tenn. 145, 407 S.W.2d 452. And it is fundamental that the exercise of judicial discretion may not be reviewed and attacked collaterally by habeas corpus or post-conviction proceedings, at least unless such discretionary action prejudicially trenches upon constitutional rights of the accused. Janow v. State, Tenn.Crim.App., 470 S.W.2d 19. Upon these principles, a trial judge's action upon a motion for change of venue is not reviewable by such collateral proceedings. 39 Am.Jur.2d., Habeas Corpus § 52; 5 Wharton's Criminal Procedure (Anderson), § 2230, p. 466.

Cook further charged that he was unconstitutionally denied his right of appellate review of his murder conviction because the District Attorney General wrongfully required him to waive that right as a condition precedent to being permitted to plead guilty to simple robbery under an armed robbery indictment and take a sentence of five to 10 years to be served concurrently with his murder sentence.

His amended petition expresses that position as follows:

"However, by the pressure and intimidation which was exerted against your petitioner, the threat of a trial in the pending robbery case (case no. 891), and the threat by the Attorney General that upon conviction of same he would see to it that he got twenty years, and run it consecutively to the judgment of the murder case, the petitioner was forced to accept the offer of the Attorney General to plead guilty to the lesser charge of simple robbery and accept the judgment rendered therein, upon the assurance that it would run concurrent with the aforementioned judgment in the murder case; that as a part of said agreement to plead guilty, the Attorney General required defendant to withdraw his pending motion for a new trial in case no. 890, and to further waive an appeal of said case to the Criminal Court of Appeals.

"That as a result of these pressures and intimidations, the petitioner [was] effectively denied his constitutionally afforded right to appeal the judgment of case no. 890."

But the petitioner's proof at this evidentiary hearing does not sustain those averments. He testified that his attorney advised him to plead guilty to simple robbery; that when he entered his guilty plea in the robbery case, the trial judge asked him whether he had been advised of his rights and whether his guilty plea was entered freely and voluntarily and without any coercion, and that he answered both of the questions affirmatively in the presence of his attorney and a jury.

Petitioner's attorney testified that because of "a technical error in the indictment charging the defendants with armed robbery," and because all four defense attorneys considered that it would not be in the best interest of the defendants to try them on the murder indictment and the robbery indictment at the same time "therefore, we refused to allow the indict-

ment to be changed and the technical error to be cured. And therefore we went to trial only on the indictment of murder"; that the ultimate agreement he worked out with the District Attorney General in the robbery case several months later was that the petitioner would be permitted to plead guilty to simple robbery and take a sentence of five to 10 years to be served concurrently with his murder sentence and that he would waive his right of appeal in the murder case; that the trial judge had told him he would approve such a sentence upon a plea of guilty in the robbery case; that he was then and still is of the opinion there was no reversible error in the murder trial record; that he recommended to the petitioner that he accept that proposition; "That's right. I felt my responsibility to Troy was in the entire unfolding of this matter to get him in the best position once the jury had spoken to get him out of the penitentiary as soon as I could. This is what I felt my responsibility was"; that Cook wanted to pursue his motion for a new trial and appeal his murder conviction, "Yes, he would have wanted to and the reason that he wanted to is that it was hoped that he would be able to stay out on bail. So it was a decision for Troy and me as to whether he faced up to his medicine, so to speak, in October of '68 or possibly at some later date"; that the District Attorney General never talked directly to the defendants and never made any statement in his presence threatening to deal more harshly with the petitioner if he did not plead guilty and insisted upon a trial, and that he did not make any such statement to the petitioner; "My concern was that whatever he did with reference to the second indictment it would not hold him in the penitentiary an hour longer. That is what I was concerned with. And going even further, faced with what I believe that some day somewhere Troy would have to do time on the jury verdict, I looked down the line and seeing the absurdity and tragedy of this incident that we might need Judge LaRoche and Attorney General Holloway at some date in the future to assist

us as we moved toward possible pardons or the implementation of parole, and I thought this was very important and I took that into consideration in making my professional recommendation"; that he considered only the petitioner's best interest in advising him and recommending that he plead guilty in the robbery case; that the petitioner is an intelligent man, "and I don't recall at any time in the months and months that I represented him that I had any feeling at all that Troy did not only understand what I was telling him, but he had an absolute depth of understanding as to what was going on"; that the petitioner was not coerced in any way; and that under the same circumstances he would make the same decisions.

The District Attorney General at the time of the trial, now the Circuit Judge of that circuit, testified relative to working out the agreement for the petitioner and his co-defendants to plead guilty to simple robbery in the armed robbery case, "And at one time during the proceedings all of the counsel called me in and had their boys back here in this room, and asked me to state my position. And I told them—I'm relatively positive I told them at that time that in the event there was a trial that I felt I had to resist everything right straight down the line. And in the event a plea of guilty was entered that I would abide by my agreement and not resist their applications for the running concurrent but that it would address itself solely and alone to Judge LaRoche's good judgment"; that when the petitioner and his co-defendants entered their pleas of guilty, "Judge LaRoche in his thorough way, and he was very thorough in accepting pleas of guilty, went through every bit of the procedure then known or could be conceived by the human mind in order to determine whether or not these boys understood what they were doing and whether or not these were voluntary entered and whether they knew what they were charged with."

This record clearly does not support the petitioner's insistence that he was coerced to plead guilty in the robbery case by the threats or intimidation of the District Attorney General or anyone else. He faced a capital case and the possibility of severe punishment. Through his able and conscientious retained counsel, the petitioner initiated the negotiations with the State which resulted in an agreement providing for a mutually satisfactory and agreeable sentence upon his plea of guilty. By negotiation he accomplished his purpose of trading himself out of his crime upon his own terms. By doing so he not only avoided trial upon a charge of armed robbery and the possibility of a much more drastic sentence for that offense, but he also accomplished his objective of getting to serve the agreed sentence concurrently with his prior second degree murder sentence, with the result that actually he escaped any imprisonment whatever for the robbery. Upon this record there can be no question that the petitioner knowingly and understandingly, and with the advice and assistance of competent counsel, drove a bargain with the State highly advantageous and favorable to himself, deliberately planned and obtained its final approval by a jury and by the court.

"In cases in which this exercise of judgment by counsel (that of urging a defendant to enter a plea of guilty) has been attacked, it has uniformly been held that this is not a ground for invalidating the judgment." State ex rel. Richmond v. Henderson, 222 Tenn. 597, 439 S.W.2d 263.

◼ The law has long been firmly established and settled that a plea of guilty, understandingly and voluntarily entered on the advice of counsel, constitutes an admission of all facts alleged and a waiver of all non-jurisdictional and procedural defects and constitutional infirmities, if any, in any prior stage of the proceeding. State ex rel. Lawrence v. Henderson, Tenn. Crim.App., 433 S.W.2d 96; Myers v. State, Tenn.Crim.App., 462 S.W.2d 265; Beaty v. Neil, Tenn.Crim.App., 467 S.W.2d 844.

■ But the petitioner attacked the validity of his convictions upon yet another ground. Briefly, in his petition he alleges that the robbery charge arose out of the same facts as the murder charge; that the conviction of murder in the second degree necessarily operated as an acquittal of the robbery charge; that trial on the robbery indictment would have placed him in double jeopardy and would have been a nullity; and that his plea of guilty under the void robbery indictment was void and he was thereby forced to withdraw his new trial motion and waive his appeal in the murder case.

The learned chancellor held, upon the authority of Walton v. State, Tenn.Crim. App., 448 S.W.2d 690, that "the offenses of murder and robbery, under the facts of this case, constituted one single continuing criminal act and are, therefore, but one offense. The highest offense, that of murder in the second degree, will be allowed to stand. The sentence of the petitioner on his plea of guilty to robbery is void and is therefore, set aside and the indictment for the same is quashed.

\* \* \* \* \* \*

". . . The State of Tennessee did not have the legal right to charge the petitioner with the separate offense of robbery under the facts of this particular case.

"I hold that the petitioner, Vivian Troy Cook, was effectively prevented from proceeding with an appeal in the murder case by the agreement which he was required to make with the State in order to reach a settlement of the robbery case. I hold that the petitioner had every legal right to prosecute an appeal of his conviction for the offense of murder in the second degree and the sentence of not less than ten (10) years nor more than fifteen (15) years in the penitentiary. I hold that the petitioner, Vivian Troy Cook, was denied his right to an appeal in the nature of a writ of error from his original conviction in violation of the Constitution of the State of Tennessee, and that there is adequate record of the original trial proceeding available for such review. Subsection (3) of Title 40, Section 3820, Tennessee Code Annotated, appears to be the appropriate provision of the law governing a delayed appeal in this case since no motion for a new trial was filed in the original proceeding."

The chancellor's holding, virtually adopting the petitioner's alternative contention, proceeds upon a premise untenable under this record. This is not a case like Walton v. State, supra, wherein the defendant was convicted under one indictment charging him with burglariously breaking and entering Carolyn Few's dwelling house with the intent to rape her, and was also convicted under a separate indictment charging that at the same time and place he committed an assault and battery upon Carolyn Few with the intent to rape her. In other words, the two crimes charged against Walton in the separate indictments were committed against the same person at the same time and place and as part of a single criminal act. In that situation, this Court in *Walton* simply applied the established law of this State prohibiting the pyramiding of punishment for a single criminal act or transaction. In addition to the cases cited in *Walton,* see White v. State, Tenn.Crim.App., 454 S.W.2d 159 and McAfee v. State, Tenn.Crim.App., 463 S. W.2d 141.

The inapplicability of *Walton,* supra, and the other cases cited denouncing punishment pyramiding, to the petitioner's convictions of second degree murder and robbery is made plainly manifest by this record. In his petition he prayed that *"the victim in this robbery case"* (and various other persons named) be subpoenaed as witnesses in his evidentiary hearing. The Circuit Judge, who as District Attorney General prosecuted the petitioner and his co-defendants, testified, concerning the robbery indictment, that "I couldn't find anywhere citation of any case where you have a charge of murder against one person and armed robbery or robbing of another person, which occurred about the same time,

where they merged or did not merge." One Palmer Cook, Jr. testified that he was the prosecutor in the robbery case.

So, this record leaves no room for doubt that the person the petitioner and his co-defendants were indicted for robbing was not the same person they were indicted for murdering, and that, therefore, two wholly separate and discrete felonies were charged in the two indictments. That is not a pyramiding of punishment based upon a single act or transaction. Surely it is not the law that one who feloniously kills two or more persons during an altercation or in the commission of a felony, or by poison or by ambush, can only be convicted and punished for killing one of them.

In Morgan v. State, 220 Tenn. 247, 415 S.W.2d 879, our Supreme Court held that the two defendants who at the same time and place robbed three women who were living together and who jointly owned the money were properly prosecuted separately for the robbery of each one of the women. The Court said:

"Defendants contend the robbery of the three women constituted a single offense. They base their contention upon the evidence the women were living together, owned the money jointly and the robbery took place as a single act.

"In support of this contention, defendants cite and rely upon the following rule:

'Where the facts constitute but one offense, though it may be susceptible of division into parts, as for stealing several articles from the same person at the same time, conviction for stealing one of the articles will bar a subsequent prosecution for stealing the others.' Usary v. State, 172 Tenn. 305, 112 S.W.2d 7, 114 A.L.R. 1401 (1938).

"In the case of Wilkerson v. State, 211 Tenn. 32, 362 S.W.2d 253 (1962), this Court approved the following principles:

'Where accused robbed two or more persons at the same time the prosecution for one of the robberies does not prevent a subsequent prosecution for another.' 22 C.J.S. Criminal Law § 298, page 788.

'A putting in jeopardy for one act is no bar to a prosecution for a separate and distinct act merely because they are so closely connected in point of time that it is impossible to separate the evidence relating to them on the trial for the one of them first had.' 15 Am.Jur., Criminal Law, Section 390, page 65.

"These principles have been approved by the Supreme Court of the United States in the case of Hoag v. State of New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L. Ed.2d 913 (1958)."

We are of opinion and hold that the chancellor erred in entering the judgment indicated in the second paragraph hereof. That judgment is reversed and this post-conviction petition is dismissed.

WALKER, P. J., concurs.

GALBREATH, Judge (concurring).

I concur in the disposition of this appeal but believe it would have been more easily understood if the parties or the court below had spelled out that the victim in the murder case was one Richard Bragg, a person separate and distinct from the victim in the companion robbery case, Palmer Cook, Jr. This we may only do by taking judicial notice of the entire record in the original cases, since the record in this case as it appears before us fails to specify just who the murder victim was, although by clear inference, as pointed out by Judge Oliver, the murdered man had to be someone other than the victim in the robbery case who was a witness.