UNITED STATES of America
v.
Jack L. LEWIS.

UNITED STATES of America
v.
James Louis WILLOZ et al.

Crim. Nos. 26105, 26943.

United States District Court,
E. D. Louisiana.

May 26, 1972.

Virgil M. Wheeler, Jr., New Orleans, La., for movants, Lewis and Willoz.

Gerald J. Gallinghouse, U. S. Atty., by John R. Schupp, Asst. U. S. Atty., E. D. La., New Orleans, La., for the government.

CHRISTENBERRY, District Judge.

By this decision the court grants the motions of the above two movants, Lewis and Willoz, who as defendants in different cases have simultaneously filed motions in the nature of applications for writs of error coram nobis to vacate and set aside the judgments and sentences of this court and to be repaid fines paid pursuant to such sentences.

On January 29, 1958, Jack L. Lewis pled guilty to two counts of an indict-ment charging him with violations of the Internal Revenue Code for failure to pay the special occupational tax imposed under 26 U.S.C. § 4411 and for failure to file the return required by 26 U.S.C. § 4401. By his plea of guilty, Lewis was convicted and by way of sentence he was fined $1,000.00 on each of the afore-mentioned violations. Accordingly, he paid a total of $2,000.00 in fines at that time. Presently, Lewis appropriately seeks via the writ of coram nobis to have his 1958 conviction annulled, vacated, and set aside. To this the government does not object. Defendant Lewis, however, also prays that the government be ordered to repay him the $2,000.00 fine which he paid in 1958.

In the companion case, also to be ruled upon in this opinion, the petitioner is James Louis Willoz who was convicted on June 15, 1960, on his plea of guilty to a charge of failure to pay the special occupational tax required by 26 U.S.C. § 4411. Willoz paid a $1,000.00 fine on this conviction, and now, like Lewis, on the basis of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), he seeks to have the conviction set aside. To this, again, the government interposes no opposition, but strongly objects to Willoz's additional plea in his coram nobis application that the $1,000.00 fine be repaid.

This court's jurisdiction to entertain this application for a writ of error coram nobis is founded upon 28 U.S.C. § 1651(a), the all-writs section of the Judicial Code, inasmuch as these petitioners are outside the ambit of 28 U.S.C. § 2255. Section 2255 is by its own language limited to prisoners "in custody" and thus the Supreme Court, for cases just such as this, resurrected and sanctioned the extraordinary writ of error coram nobis as a proper jurisdictional avenue by which to attack collaterally an allegedly illegal conviction and sentence. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). These motions go further, how-

ever, and in effect amount to suits brought against the government for money judgments and on this basis the court has jurisdiction under the Tucker Act. 28 U.S.C. § 1346(a)(1).

■■ The primary point to be remembered in this discussion was made by Mr. Justice Harlan in United States v. U. S. Coin & Currency, 401 U.S. 715, 723, 91 S.Ct. 1041, 1046, 28 L.Ed.2d 434 (1971): *"Marchetti* and *Grosso* dealt with the kind of conduct that cannot constitutionally be punished in the first instance."* Complete retroactivity has now been accorded the *Marchetti-Grosso* rule, U. S. Coin & Currency, *supra;* United States v. Lucia, 416 F.2d 920 (5th Cir. 1969), aff'd en banc, 423 F.2d 697 (5th Cir. 1970), cert. denied, 402 U. S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971), but all of the implications of retroactivity are not yet clear. At least it is known that the prosecutions of Lewis in 1958, and Willoz in 1960, were barred by the Fifth Amendment and that the resulting convictions must be vacated and set aside. With this the government concurs.

■ The government, however, advances the transparent argument that because Willoz and Lewis both chose to plead guilty they voluntarily acquiesced in their sentences and are not entitled to reimbursement of the money which they paid as fines. Had they pled not guilty and exhausted their rights to appeal, then, implies the government, repayment would be forthcoming. This reasoning ignores the realities and imperfections in the administration of criminal justice by the courts and the prosecution, whether in a federal or state setting, and, furthermore, it characterizes the worst features of an impersonal and unresponsive governmental bureaucracy.

■ Well before Lewis and Willoz were faced with these prosecutions, the Supreme Court had refused to extend the Fifth Amendment's protective cloak to these gambling tax requirements. Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955); United States v. Kahriger, 345 U.S. 22, 32, 73 S.Ct. 510, 97 L.Ed. 754 (1953). It was not until 1968, with the *Marchetti-Grosso* duo, that the *Lewis-Kahriger* narrow view of the Fifth Amendment was abandoned. Until that time, however, this particular issue of law was considered settled doctrine and thus it is questionable whether any useful purpose is served by the debate over whether movants acted voluntarily or involuntarily in paying the fines. The important consideration is that Willoz and Lewis had no knowledge of their right against self incrimination because until *Marchetti* and *Grosso* that right was unknowable. This court agrees with Judge Wisdom's view in *Lucia, supra,* 416 F.2d at 922, that, in such circumstances, it is not possible to waive an unknown right. A person in the unenviable situation of one of these movants cannot freely react if he is unaware of all of his options. Consequently, a plea of guilty and the payment of a court-imposed fine in the face of the unfavorable, and since abandoned, constitu*tional principles embodied in Lewis, supra, and Kahriger, supra, can hardly be* described as voluntary acts.

This court is inclined to take the view that movants' guilty pleas were, for the purposes of this motion, less than voluntary; namely, they pleaded under the duress of penalties provided by a statute since declared unconstitutional. To have pled not guilty to all counts originally charged and to have taken the considerable risks that attend any defendant before a jury might have resulted in greater fines and/or imprisonment for these petitioners.

Perhaps it is easier to understand why the retrospective application of *Grosso* and *Marchetti* should mean that movants' convictions are vacated and annulled than it is to understand why there should be restitution of the fines, but I am of the opinion that retroactivity should encompass both. True it is that the application of the retroactivity doctrine encounters conceptual difficulty

for those who are imprisoned and then affected by a retroactive decision, but that also is a situation which could be remedied, although it awaits for Congress to enact a scheme of compensation payments for those whom the federal government wrongfully incarcerates.

▮▮ But, certainly, this court's equity powers are broad enough to remedy the situation here existing in which manifest injustice has occurred. In addition, certainly the executive branch of the government can comply with this repayment order without suffering undue inconvenience or administrative hardship. While there are no means available to compensate a person who has been imprisoned for violating a statute that is subsequently found constitutionally void and retrospectively applied, there is always a means for such a person to recoup his losses when the loss takes the form of a monetary fine. The Fifth Amendment prohibition against the taking of one's property without due process of law demands no less than the full restitution of a fine that was levied pursuant to a conviction based on an unconstitutional law. Fairness and equity compel this result, and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were proceeding in good faith at the time of prosecution.

Thus the retroactive applications of *Marchetti* and *Grosso* here will have more than simply an *in futuro* effect. That is, not only will the convictions be annulled so that there will be a restoration of any civil rights lost by movants due to these prosecutions, but, in addition, there will be restitution of the fines. This is a logical application of a principle that has been accorded complete retroactivity.

In United States v. Rothstein, 187 F. 268, 269 (7th Cir. 1911), the Seventh Circuit Court of Appeals, when confronted with a similar situation, stated:

"Payment of the fine, even if the judgment of conviction was void, is not to be deemed a voluntary contribution to the government, and therefore is not a bar, if the recovery in other respects is sustainable."

The defendant Rothstein, upon entering a plea of nolo contendere to a charge of violating an immigration statute, was convicted and fined $200.00 which fine he promptly paid. A few months later the Supreme Court declared that statute unconstitutional and Rothstein obtained a court order vacating the conviction and ordering the fine repaid. This result was cited with approval in Mossew v. United States, 266 F. 18, 20, 22 (2d Cir. 1920). *See* Rio Cape Line, Ltd. v. United States, 89 Ct.Cl. 307, 315 (1939).

The government relies on the Supreme Court case of United States v. Gettinger, 272 U.S. 734, 47 S.Ct. 276, 71 L.Ed. 499 (1927), as standing for the proposition that a federal district court does not have jurisdiction to entertain a motion for the recovery of a fine paid after a plea of guilty or nolo contendere for the violation of a statute when that statute is subsequently declared unconstitutional. This statement of *Gettinger* is misleading and, indeed, the *Gettinger* case is quite susceptible to misinterpretation. *E. g.,* United States v. Western Chemical & Manufacturing Co., 78 F. Supp. 983 (S.D.Cal.1948). Because of the cursory opinion rendered in *Gettinger* and the Court's reliance on contractual principles, I find that case distinguishable (despite the headnotes which are not fully in agreement with the text of the opinion) and inapposite. The *Gettinger* defendants pled nolo contendere to a Lever Act violation and they were convicted. When entering their nolo pleas, however, each defendant "undertook to 'waive any and all claims which I now have or hereafter may have to any and all fines which the court may see fit to impose upon me upon such

plea, except in the event that the so-called Lever Act under which said indictment is founded shall be declared unconstitutional . . . .' " 272 U.S. at 735, 47 S.Ct. at 276. The defendants promptly paid the fine imposed by the court. Later the applicable part of the Lever Act was declared constitutionally defective and defendants claimed that the government was contractually obligated to repay the fine. To this the Supreme Court stated:

> "The attempt by plaintiffs in error to reserve rights if the Lever Act should be held unconstitutional amounted at most to a protest, possibly sufficient to overcome the suggestion of an estoppel, but no contract arose out of it which obligated the United States to return the fine. Neither the court nor any federal officer had authority to make such an agreement."

272 U.S. at 735, 47 S.Ct. at 276. The *Gettinger* Court simply found no implied contract and thus held that the government was not obligated to repay the fines on that theory. To expand that holding as the government now urges is unwarranted.

Accordingly, it is ordered that for the reasons assigned above the motions of Jack L. Lewis and James Louis Willoz in the nature of applications for writs of error coram nobis be granted and that the conviction of Lewis in 1958, for violation of 26 U.S.C. § 4411 and 26 U.S.C. § 4401 in Criminal Action 26,105 be and it is vacated, annulled, and set aside; and that the conviction of Willoz in 1960 for violation of 26 U.S.C. § 4411 in Criminal Action 26,943 be and it is vacated, annulled, and set aside.

It is further ordered that there be restitution by the government of the fine paid by Lewis in 1958, in Criminal Action 26,105 in the amount of $2,000.00; and of the fine paid by Willoz in 1960, in Criminal Action 26,943 in the amount of $1,000.00. The Clerk will prepare a judgment to this effect.