CAPRI ADULT CINEMA et
al., Petitioners,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

March 22, 1976.

Frierson M. Graves, Jr., and Michael F. Pleasants, Memphis, for petitioners; Heiskell, Donelson, Adams, Williams & Kirsch, Memphis, of counsel.

R. A. Ashley, Jr., Atty. Gen., William C. Koch, Jr., Asst. Atty. Gen., Noel R. Bagwell, Dist. Atty. Gen., for respondent.

## OPINION

HARBISON, Justice.

Petitioners, together with a codefendant Earl L. Heath, were named in seven indictments, returned on February 21, 1973, charging them with violation of T.C.A. §§ 39–3003 et seq., a portion of the then obscenity laws of the state.

After plea bargaining, petitioners entered a plea of guilty to one of the indictments and expressly agreed for the trial court to fix the sentence. Sentence was imposed under this indictment, fixing separate fines upon the corporation and the individual petitioners. The latter also received a jail sentence, which was suspended.

As the result of the plea bargaining, a nolle prosequi was entered as to a codefendant of the petitioners, Earl L. Heath. All of the films which were the subject of the indictments in all of the seven cases were "released to the Sheriff's Department to be destroyed by the said department," according to the final judgment in the record before us. The other six indictments against the petitioners and their codefendant were dismissed as the result of the agreement reached between the parties.

The final judgment referred to was entered on January 8, 1974. No motion for a new trial was filed and no appellate review sought, and at the end of thirty days the judgment became "final", in the parlance of state practice and procedure. Only a technical record has been filed before this Court, but it is stated in briefs of counsel that the fine imposed in the final judgment was immediately paid. The one-year probation provided for the individual petitioners in connection with their suspended sentence has expired, so that the sentence imposed upon the petitioners has been fully executed according to its terms.

On December 20, 1973, more than two weeks prior to the entry of the guilty plea, petitioners had filed a motion for a continuance, alleging that the constitutionality of the obscenity statute under which they were indicted was then under consideration in the Tennessee Supreme Court, in another case, the style of which was cited in the motion. The record reveals that this motion for continuance was overruled on December 26, 1973. On December 28, 1973 petitioners filed a second motion for a continuance, again referring to the constitutional question pending in this Court. In the alternative petitioners asked the trial court to respond to a series of questions as to the test for obscenity which would be applied in their trial, which was set on

January 8, 1974. No order in response to this motion appears in the brief technical record filed before us, but we assume that this supplemental motion was also denied, since on January 8, 1974 an order was entered, signed by the petitioners individually and by their counsel, as follows:

"After being advised of all rights regarding the Court fixing a fine in excess of $50.00, the Defendants expressly waive all constitutional provisions and agree for the Court to fix a fine in excess of $50.00."

On the same date the final judgment previously referred to was entered.

Some forty-two days later, on February 19, 1974, this Court rendered an opinion in the case which had been referred to in the motion for continuance, *Art Theater Guild, Inc. v. State ex rel. Rhodes,* 510 S.W.2d 258 (Tenn.1974), holding the statute under which petitioners were indicted to be unconstitutionally vague and overbroad. Responding to a petition to rehear, the Court filed a supplemental opinion on May 6, 1974, in which the Court indicated that its ruling should be applied retrospectively as well as prospectively. Thereafter, petitioners in the present case took no action in the trial court.

On January 6, 1975, two days prior to the anniversary date of the guilty plea, petitioners filed a petition for writ of error in the Court of Criminal Appeals, seeking reversal of their guilty plea and the vacation of their sentence, together with restitution of the fines paid, in reliance upon the ruling of this Court in the *Art Theater Guild* case.

The Court of Criminal Appeals denied the petition, holding that there had been an implicit waiver of the right to appellate review in the plea bargaining process and the resulting guilty plea. We granted certiorari to give further consideration to this question.

It is suggested in the brief for petitioners that the guilty plea entered in the case was not entirely "voluntary", but there is a complete absence of any evidentiary record to sustain any such suggestion. Of course, it is elementary that if a guilty plea is entered through coercion, fraud, duress or mistake, appropriate relief may be obtained. The only argument advanced suggesting that the plea was involuntary, however, in the present case is that the petitioners were facing trial with the possibility of much larger fines or greater terms of imprisonment than were actually imposed. This, of course, is present in almost every plea bargaining situation with a resulting guilty plea, and, in itself, is wholly insufficient to sustain any suggestion that the guilty plea was "involuntary" as that term has been used in cases granting relief from such a plea.

As previously stated, no evidentiary record of any sort was filed in support of the petition for writ of error, nor are there any affidavits or other material upon which a finding of involuntariness could be predicated.

Stripped of any issue as to the voluntary nature of the guilty plea, therefore, the question which remains for consideration is whether or not appellate review can be sought of this guilty plea, when the sentence imposed thereunder has been fully and finally executed, upon the sole ground that the criminal statute upon which the indictment was based was subsequently declared unconstitutional.

We are of the opinion that the Court of Criminal Appeals was correct when it determined that there was an implied waiver of the right of appellate review by the proceedings reflected in this record. The guilty plea was entered at a time when it was known by all parties that the statute upon which the indictments rested was being challenged. The statute had been sustained by the Court of Criminal Appeals, and had originally been upheld by this Court. On appeal, however, the United States Supreme Court had remanded the case for reconsideration in light of its decision in the case of *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The case had been re-argued in this Court.

The decision was pending at the time when the guilty plea in the instant case was entered.

It thus appears that the petitioners deliberately and knowingly dealt with the State on the strength of a statute whose constitutionality was being challenged, and accepted the benefits of their plea bargaining, including the dismissal of six of seven indictments as to all of them and the complete dismissal of the charges as to their codefendant, suspended jail sentences, and fines much less than those with which they were faced had they stood trial.

■ Petitioners concede that ordinarily there can be no appeal from a plea of guilty. This principle has been stated in a number of cases in this state. See *Ray v. State,* 224 Tenn. 164, 451 S.W.2d 854 (1970); *McInturff v. State,* 207 Tenn. 102, 338 S.W.2d 561 (1960); *Washington v. Tollett,* 4 Tenn.Cr.App. 296, 470 S.W.2d 841 (1971).

Petitioners insist, however, that none of these cases involved a constitutional issue, and it is their insistence that when an underlying criminal statute is declared unconstitutional, subsequent to a guilty plea, then appellate review may be sought to vacate the guilty plea and resulting sentence, without any resort to the trial court whatever.

Some authority for recovery of fines in such situations is cited in the brief of petitioners, principally federal cases resting upon the Tucker Act, 28 U.S.C.A. § 1346,[1] although all of these differ procedurally from the present case.

■ We have already noted that the judgment in the present case became final, and not subject to the ordinary method of appellate review in criminal cases, which is an appeal in the nature of writ of error. Since no steps were taken within thirty days after the entry of the judgment on the guilty plea, this method of appellate review was no longer available to the petitioners.

Tennessee still preserves the older writ of error as a method of appellate review, T.C.A. §§ 27–601 et seq. This method of review is available in criminal cases. T.C.A. § 40–3402. Under it, appellate review may be sought as late as two years from and after the final judgment in the trial court. T.C.A. § 27–605. This does not mean, however, that judgments in either civil or criminal cases remain open or unsettled for any such length of time, and separate application must be made to the appellate court in order to supersede any judgment of a trial court which has become final by passage of time and is no longer subject to the regular methods of review by appeal or by appeal in the nature of writ of error. No supersedeas was obtained in this case.

Although the constitutional issue upon which petitioners now seek to vacate their judgment was known to them, they did not present it for determination to the trial judge, but instead plea bargained with the State upon the basis of the existence of the criminal statute in question and agreed to the imposition of penalties thereunder. This case is therefore not analogous to cases in which a criminal defendant has unsuccessfully litigated a constitutional issue and has been convicted upon the basis of a statute which is subsequently declared unconstitutional. We do not consider such cases controlling here.

■ The principle is well settled in civil litigation that when parties have dealt with each other at arms' length upon the basis of an unconstitutional statute, they are bound by the results of their actions. Thus in the Case of *Roberts v. Roane County,* 160 Tenn. 109, 123, 23 S.W.2d 239, 243 (1929), after citing a number of cases, the Court said:

"The authorities cited do not question the general rule, that an unconstitutional statute is not a law, does not of itself confer any rights, duties or obligations, and is 'in legal contemplation, as inopera-

1. *Pasha v. U. S.,* 484 F.2d 630 (7th Cir. 1973); *U. S. v. Lewis,* 342 F.Supp. 833 (E.D.La.1972), aff'd 478 F.2d 835 (5th Cir. 1973); *DeCecco v.* *U. S.,* 485 F.2d 372 (1st Cir. 1973); *U. S. v. Summa,* 362 F.Supp. 1177 (D.Conn.1972).

tive as though it had never been passed.' . . . But it is recognized that parties may so deal with each other upon the faith of such a statute that neither may invoke the aid of the courts to undo what they themselves have done."

See also *State v. Hobbs,* 194 Tenn. 323, 333, 250 S.W.2d 549 (1952).

In the case of *Moore v. Lawrence County,* 190 Tenn. 451, 230 S.W.2d 666 (1950), the same principles were applied in a case involving a criminal fine. There the appellant had pled guilty in a criminal proceeding in a general sessions court, and had paid his fine. Subsequently, over two years later, he filed a separate suit in the chancery court to recover the fine, claiming that the general sessions court was without constitutional authority to levy the fine in question. Both the trial court and this Court concurred in dismissing the suit. The Court said:

"If the settlement of the case in the General Sessions Court was illegal (we do not find it necessary to decide that it was, or was not), the Complainant was a willing party to the illegality, and so is not entitled to relief in equity since he has enjoyed the fruit of his wrongdoing; and if, on the other hand, the settlement was legal, it was final and binding on the Complainant." 190 Tenn. at 454, 230 S.W.2d at 668.

A similar result was reached by the United States Supreme Court in the case of *U. S. v. Gettinger,* 272 U.S. 734, 47 S.Ct. 276, 71 L.Ed. 499 (1927), where, at the time of paying a fine under a plea of nolo contendere, the defendants expressly sought to reserve the question of the constitutionality of the statute under which the fine was imposed. In a subsequent proceeding to recover the fine, relief was denied by the Court. Although this case has been cited and efforts made to distinguish it in decisions of federal district and intermediate appellate courts, our research does not indicate that it has ever been overruled or

modified by the United States Supreme Court itself. The subsequent decisions turn on the language or provisions of the Tucker Act, *supra,* other than those cited by the United States Supreme Court in its opinion.[2]

■ As previously stated, the Court of Criminal Appeals concluded from such facts as appear from the technical record in this case that petitioners waived their right to seek appellate review of their guilty plea. Our review of the record leads us to the same conclusion. Indeed, the regular method of review on appeal was precluded by the passage of time before the constitutional issue on which the present appeal is predicated had ever matured, since the petitioners themselves deliberately refrained from presenting it to the trial judge by the procedure followed. No supersedeas was ever sought or obtained in connection with the petition for writ of error, which was timely filed, so that the judgment of the trial court, including the probationary period for the suspended sentence, became fully executed by payment of the fine and by lapse of time.

■ We are cognizant of statements found in the cases of this and other states that an unconstitutional criminal statute is "void from the date of its enactment", and that there can be no valid conviction thereunder. See *State v. Dixon,* 530 S.W.2d 73, 74 (Tenn.1975); *State v. Collins,* 528 S.W.2d 814, 817–818 (Tenn.1975). We further recognize that as a general rule, constitutional issues may be raised for the first time on appeal. *Veach v. State,* 491 S.W.2d 81 (Tenn.1973).

Since we have concluded that there was an implicit waiver of the right of appeal by the conduct of petitioners, however, and since the petitioners took no action in the trial court to seek relief from the judgment there before it was fully executed, we do not consider that the principles of those cases mandate the granting of relief in the present case.

2. See cases cited in footnote 1, *supra.*

■ We do not mean to suggest that persons situated as petitioners would necessarily be without a remedy in the trial court in every case. Recovery of a fine voluntarily paid is seldom allowed even if the fine is illegally assessed, 36A C.J.S. Fines § 17, absent a specific statutory provision authorizing it. Relief is more readily obtainable for an unexpired jail or prison sentence, if application is made prior to full execution of the sentence.

Ordinarily, in either civil or criminal litigation, relief is obtained by application to the trial court when the occasion for relief arises or is discovered after the time for regular appellate review has elapsed. Rule 60 of the Rules of Civil Procedure provides for such relief in civil cases under the circumstances therein set out. T.C.A. § 40–3802 provides for post-conviction relief on constitutional issues in criminal cases prior to completion of a sentence and after the expiration of the time for perfecting an appeal in the nature of a writ of error. T.C.A. § 40–3411 permits the filing of a petition for writ of error coram nobis in criminal cases within one year after judgment and includes as ground for relief "errors dehors the record and . . . matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding."

We note that in each of the cases cited by the petitioners in their brief, where recovery of a fine was permitted following a guilty plea and subsequent determination of the unconstitutionality of the criminal statute, post-conviction proceedings were instituted in the trial court, in the nature of a petition for writ of error coram nobis or by motion to withdraw the guilty plea, terminate probation and obtain remission of the fine. Coram nobis procedures were used in the federal cases cited by petitioners, and a

motion was used in the case of *People v. Weintraub*, 20 Ill.App.3d 1090, 313 N.E.2d 606 (1974).

Tennessee statutes permit "courts in which a cause is finally adjudged" to release defendants from fines "either before or after final judgment, for good cause . . . ." T.C.A. § 40–3202.

Whether any of the foregoing remedies in the trial court would have been available to these petitioners under the circumstances of this case is a matter we do not decide, because petitioners never utilized any of them. We merely hold that the relief sought cannot be obtained upon writ of error, under the facts shown in this record.

The judgment of the Court of Criminal Appeals is affirmed at the cost of petitioners.

FONES, C. J., and COOPER and BROCK, JJ., concur.

HENRY, J., dissents.

HENRY, Justice (dissenting).

I respectfully dissent.

I.

The Tennessee obscenity statutes incorporated in Section 39–3001, T.C.A., et seq., as they existed at the time the indictment was returned in this case, were declared unconstitutional and void by this Court in 1974 in *Art Theater Guild, Inc. v. State ex rel. Rhodes*, 510 S.W.2d 258 (Tenn.1974).[1] In plain terms this decision was given both retroactive and prospective application.

Since the convictions in these cases were obtained pursuant to guilty pleas while the old obscenity law was in effect, first consideration must be directed to the validity of a conviction under an act subsequently declared unconstitutional. I regard this as

---

1. Actually this case only struck down § 39–3007, T.C.A., but since this section contained the definition of obscene materials a declaration of its unconstitutionality left the remaining sections bereft of any criteria, and, therefore,

this effectively invalidated the entire act. Sections 39–3001 to 39–3008 were repealed by Ch. 510 of the Public Acts of 1974 and were replaced by § 39–3010—39–3022 (Ch. 510, Tenn. Public Acts 1974; Adj.S.).

the threshold issue and one of controlling significance. This issue was not addressed by the Court of Criminal Appeals, and the opinion of my colleagues only gives it a broad brush treatment.

It is a general rule of law that "an unconstitutional statute is not a law, does not of itself confer any rights, duties, or obligations, and is 'in legal contemplation, as inoperative as though it had never been passed.'" *State for Use and Benefit of Lawrence County v. Hobbs*, 194 Tenn. 323, 250 S.W.2d 549 (1952) quoted with approval in *O'Brien v. Rutherford County*, 199 Tenn. 642, 288 S.W.2d 708, 710 (1956).

The late Justice Chambliss, speaking for the Court in *Henry County v. Standard Oil Co.*, 167 Tenn. 485, 71 S.W.2d 683 (1934) declared:

It is well settled that an unconstitutional act is not a law, and imposes no obligations and confers no right of recovery. It is "inoperative as though it had never been passed." 167 Tenn. at 486, 71 S.W.2d at 684.

In 16 Am.Jur.2d, *Constitutional Law*, Section 177 (1964) the rule is stated thusly:

The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and ineffective for any purpose; since unconstitutionality dates from the time of its enactment, and not merely from the date of the decision so branding it, an unconstitutional law, in legal contemplation, is as inoperative as if it had never been passed. Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted.

In *In re Boyd*, 189 F.Supp. 113 (M.D. Tenn.1959) Judge Miller, now serving on the Sixth Circuit bench, held that where a "statute itself is void it must necessarily follow that all proceedings under the statute are also void, including the indictment, the conviction, and the sentence imposed by the court." 189 F.Supp. at 116.

I would hold that the convictions of the petitioners were void *ab initio* and that the resulting punishments were invalid as a matter of law.

## II.

I next address the insistence of the State, and the holding of the Court of Criminal Appeals, that there may be no appeal from a plea of guilty. With this general proposition of law I find no fault.

It is undoubtedly the law that a plea of guilty, understandingly and voluntarily entered into on the advice of counsel, constitutes an admission of all facts alleged and a waiver of all non-jurisdictional and procedural defects and constitutional infirmities, in any prior state of the proceeding. *Shepard v. Henderson*, 1 Tenn.Cr.App. 694, 449 S.W.2d 726 (1969).

But this general rule of law cannot operate to validate a guilty-plea conviction under an unconstitutional act.

In 21 Am.Jur.2d, *Criminal Law*, Section 495 (1965), it is said:

An accused, by pleading guilty, waives all defenses other than that the accusatory pleading *charges no offense*, that is, he admits only the acts well-pleaded in the charge, and *is not precluded from claiming that such facts do not constitute a crime.* (Emphasis supplied).

Nor is it an unyielding rule that a plea of guilty precludes an appeal.

For the general proposition that "no appeal lies from a plea of guilty", the majority opinion cites *McInturff v. State*, 207 Tenn. 102, 338 S.W.2d 561 (1960). We agree that this case stands as authority for the proposition that "no one can appeal either in a criminal or a civil case from a verdict on a plea of guilty or a judgment based upon confession of liability." 338 S.W.2d at 563. But this rule presupposes a valid conviction.

Also cited is *Ray v. State*, 224 Tenn. 164, 451 S.W.2d 854 (1970). There the court was dealing only with the right to a new trial after a voluntary, knowledgeable and competently-counselled guilty plea and where

there was no question as to the constitutional basis for defendant's conviction.

Lastly, reliance was placed upon *Washington v. Tollett*, 4 Tenn.Crim.App. 296, 470 S.W.2d 841 (1971), a juvenile case which, in my view, has no relevance to this controversy.

These cases simply do not address the precise issue under consideration. We are cited to no Tennessee case having a direct bearing. Many reiterate the proposition that a plea of guilty, understandingly and voluntarily made, on the advice of counsel, constitutes an admission of all facts alleged and a waiver of all non-jurisdictional and procedural defects and constitutional infirmities, if any, in any prior stage of the proceeding. See, e. g., *State v. Cook*, 479 S.W.2d 823 (Tenn.Crim.App.1972). That this is a sound rule of law there can be no doubt; however, a conviction under an unconstitutional penal statute is neither "non-jurisdictional" nor "procedural" nor is it a "constitutional infirmit[y] . . . in any prior stage of the proceeding."

I agree that federal authorities, for the most part, are not appropriate since many of them arise under the Tucker Act, 28 U.S.C. Section 1346(a)(1), which specifically authorizes repayment of a "penalty claimed to have been collected without authority . . . under the internal-revenue laws." See, e. g., *DeCecco v. United States*, 485 F.2d 372 (1st Cir. 1973). Federal cases, however, are pertinent to the extent of their rationale and reasoning.

In *United States v. Puncsak*, 146 F.Supp. 523, 16 Alaska 527 (1956), it is asserted that the general rule is that a defendant's plea of guilty does not preclude him from later asserting that the admitted facts do not constitute a crime.

We are cited to *Alred v. Henderson*, 406 F.2d 743 (6th Cir. 1969) for the proposition that there can be no appeal from a guilty-plea conviction. There the court was dealing with a defendant who voluntarily pleaded guilty to murder in return for a ninety-nine (99) year sentence in order to escape the electric chair. The question of the constitutionality of the statute under which he was indicted was not at issue.

I would hold that a plea of guilty, knowingly and voluntarily made, constitutes an admission of all facts alleged in the indictment and is a waiver of all non-jurisdictional and procedural defects and constitutional infirmities in any prior stage of the proceeding; but that such a plea does not preclude a subsequent insistence that such facts do not constitute a crime or that the statutory predicate of the indictment is unconstitutional and void; nor does a plea of guilty preclude an appeal under such circumstances. A conviction under an unconstitutional act is wholly void and it may be challenged at any stage of the proceeding[2] and is subject to appellate review.

### III.

Lastly there remains for consideration the matter of the remission of the fine. Since (1) petitioners were convicted under a void statute, after their motion for a continuance was improvidently overruled and at a time when all concerned knew of the impending decision as to the constitutionality of the statute; (2) their conviction was void *ab initio* and the resulting punishments were invalid; and (3) they had the right to seek appellate review, it follows as a matter of fundamental fairness that they are entitled to be made whole financially.

In this connection, we point out that this is the only avenue of relief open to them. Direct suit does not lie against the State under the present status of our law relating to sovereign immunity.

In disposing of a case involving an analogous factual situation, i. e., applicable statute subsequently held unconstitutional, the Illinois Court of Appeals, in the recent case

---

2. As a general rule a constitutional question may be raised at any time. *Veach v. State*, 491 S.W.2d 81 (Tenn.1973).

of *People v. Weintraub,* 20 Ill.App.3d 1090, 313 N.E.2d 606 (1974) said:

> Holding that a law is unconstitutional is quite different from holding that a defendant has not received constitutional treatment under a law. In the latter case the law is still there. He may be guilty, though certain of his rights may have been overridden. But, if the law is unconstitutional, there is no law and there can be no question about proper procedures for protecting his rights under the law because in theory his rights have never been threatened or affected, and he should be placed in the position he occupied before he was arrested. 313 N.E.2d at 608.

We are impressed with the reasoning of the court in *United States v. Lewis,* 342 F.Supp. 833 (E.D.La.1972) which involved the remission of a fine paid under an unconstitutional law. The court said:

> The Fifth Amendment prohibition against the taking of one's property without due process of law demands no less then the full restitution of a fine that was levied pursuant to a conviction based on an unconstitutional law. Fairness and equity compel this result, and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were proceeding in good faith at the time of prosecution. 342 F.Supp. at 836.

This Court has broad and inherent equitable powers. Among the considerations this Court must keep foremost in mind in exercising its appellate function are:

> To give a healthy tone to the practice of the lower courts, and the general jurisprudence of the State.

> \*    \*    \*    \*    \*    \*

> [and to make] our jurisprudence . . . more consonant to the essential requirements of perfect justice. Section 1377, note 17, *Gibson's Suits in Chancery* (5th ed.)

Perfect justice, a healthy tone to our jurisprudence, and basic concepts of equity and fairness demand that we remedy the manifest injustice of acquiescing in a retention of a fine in a case wherein this very court has determined the statutory basis to be wholly and utterly void.

The State owes an obligation to "tote square". The conclusion the majority reaches sacrifices justice upon the altar of procedural technicalities, and condones unjust enrichment under a void law, contrary to the dignity of the state and to the detriment of the essential requirements of perfect justice.