IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 24, 2000

## STATE OF TENNESSEE v. PATRICK MAXWELL

**Direct Appeal from the Criminal Court for Sullivan County**
**Nos. S41,647, S42,120, S42,370    R. Jerry Beck, Judge**

_____

**No. E1999-00124-CCA-R3-CD**
**October 27, 2000**
_____

The defendant pled guilty to four counts of the sale of cocaine and one count of the sale of a counterfeit controlled substance, without a recommendation from the State as to the sentence. Before he was sentenced, the defendant filed a *pro se* motion to withdraw his guilty pleas. Denying the defendant's motion, the trial court subsequently imposed an effective sentence of thirteen years and fines of $8,000. The defendant then appealed, alleging that he should have been allowed to withdraw his guilty pleas and that the sentences imposed were excessive. Based upon our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, J.J., joined.

David N. Darnell (at trial and on appeal) and John D. Parker, Jr. (at trial), Kingsport, Tennessee, for the appellant, Patrick Maxwell.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Mary Katherine Harvey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Patrick Maxwell, pled guilty to three counts of sale of less than .5 gram of cocaine, Class C felonies; one count of sale of .5 gram or more of cocaine, a Class B felony; and one count of sale of a counterfeit controlled substance, a Class E felony, for a total of five felony convictions. The defendant was sentenced by the Sullivan County Criminal Court as a Range I, standard offender to nine years for the Class B felony charge; fours years for each of the Class C felony charges; and two years for the Class E felony charge. The Class B sentence of nine years was ordered to be served consecutively to the remaining charges, which were all ordered to be served concurrently as to each other for an effective sentence of thirteen years, including fines totaling

$8,000. The trial court ordered that the manner of service be nine years in the Department of Correction followed by four years in a community corrections program.

The defendant presents two issues on appeal:

> I. Whether the trial court erred by refusing to allow the defendant to withdraw his guilty pleas pursuant to Tennessee Rule of Criminal Procedure 32(f); and

> II. Whether the sentence imposed was excessive.

Having reviewed the entire record, we conclude that the trial court properly denied the defendant's motion seeking to withdraw his guilty pleas. We further conclude that no reversible error occurred in sentencing, and the defendant is not entitled to have his sentence reduced. The judgment of the trial court is affirmed.

## FACTS

This case involves the sale of cocaine, and in one instance, counterfeit cocaine, to an undercover agent. The sales occurred as follows:

| #41647 | Count I: Sale of cocaine on 5/29/98 | Class C Felony |
| | Count II: Sale of cocaine on 6/12/98 | Class C Felony |
| | | |
| #42370 | Count I: Sale of cocaine on 6/23/98 | Class B Felony |
| | | |
| #42120 | Count I: Sale of cocaine on 7/27/98 | Class C Felony |
| | Count II: Sale of counterfeit cocaine | |
| | on 7/27/98 | Class E Felony |

According to facts presented by the State and stipulated to by the defendant at the guilty plea hearing and again at the sentencing hearing, the sales followed substantially similar sequences of events. Prior to each of the sales, an informant, known to the defendant as "the Gram Lady," met with a Kingsport Police Department detective and rode to police headquarters. At the station, she was searched by a female officer and was wired for audio.[1] She was then driven back to her car and given $100 to purchase one gram of cocaine.

On May 29, 1998, the informant drove to Riverview Apartments and circled the block. On Lewis Street, a female yelled at her to pull over. The young female asked the informant what she was

---

[1]The State's proof also included videotapes of the defendant selling cocaine to the informant on May 29, 1998; June 12, 1998; and June 23, 1998 (the Class B sale). Proof of the sale on July 27, 1998 was on audiotape only. The informant was also prepared to testify for the State.

looking for, and the informant told her she was looking for a gram. The female said her boyfriend had it and to go around the block. When the informant came back around to Lewis Street, the female motioned her to pull over and park on the wrong side of the street so that the female could talk to the informant by standing next to the driver's side window. They talked briefly, and then the defendant came out of an apartment and handed the female a small, sealed baggie, which she in turn handed to the informant. The informant then handed the female the $100. The transaction was recorded on videotape. The informant left and drove to a prearranged meeting place with a Kingsport detective to whom she gave the baggie. The Tennessee Bureau of Investigation laboratories tested the contents, which were positive for cocaine in the amount of .2 gram.

The sale on June 12, 1998, followed this same pattern except that the defendant approached the informant and handed the baggie containing a white powder to the informant. This transaction was also recorded on videotape. The contents tested positive for .2 gram of cocaine.

For the sale on June 23, 1998, a young female again approached the informant. This time, when the female handed the baggie to the informant, the informant stated that it looked like less than the gram she was paying for. The female took the baggie back and told the informant to pull around the block. As the informant passed an alley, the same female waved at her, motioning for her to stop. The informant stopped, and the defendant handed her a small, clear baggie containing a white substance. The informant still complained that it was too light. The defendant finally handed the informant two baggies. She gave him $100 and drove back to the meeting place with police detectives. This sale was recorded on videotape. The drugs tested positive for .5 gram of cocaine.[2]

The final sale to which the defendant pled guilty occurred on July 27, 1998. For this sale, the defendant called to the informant as she drove by on Lewis Street. She pulled over, and, after the usual exchange, the defendant took two baggies out and offered her one. She asked for the other also, and the defendant agreed, handing her both baggies in exchange for $100. This time the substance in one bag tested positive for .1 gram of cocaine, while the substance in the other bag contained no controlled substances at all. This sale was recorded on audiotape only.

The defendant pled guilty to each of the above offenses on February 12, 1999, in a "blind plea" agreement, that is, one without any recommendation from the State as to sentence. The State had previously offered a plea bargain agreement of sixteen years, which the defendant rejected. A note, handwritten and signed by the defendant at the request of his attorney, Mr. Parker,[3] is included in the record as an exhibit to the hearing on defendant's motion to withdraw his guilty pleas. That note states the following:

---

[2]The sale of .5 gram or more of cocaine is a Class B felony. See Tenn. Code Ann. § 39-17-417(c)(1).

[3]John D. Parker, Jr., appointed counsel, represented the defendant at his guilty plea hearing. Mr. Parker filed a motion to withdraw as counsel on February 24, 1999. David N. Darnell was subsequently appointed to represent the defendant. Mr. Darnell represented the defendant at both the hearing on the motion to withdraw pleas of guilty and the sentencing hearing.

I, Patrick Jamar Maxwell, am freely and voluntarily rejecting the State's Plea Bargin [sic] offer (which was explained completely to me and a copy of same furnished to me). My attorney, John D. Parker, Jr., recommended to me that I should accept said Plea Bargin offer but against his advice I am refusing said Plea Bargin.

This note is dated February 12, 1999, the day the trial court accepted the defendant's guilty pleas.[4]

## ANALYSIS

### Issue I.  Withdrawal of Guilty Pleas

The defendant asserts that the trial court abused its discretion in denying his motion to withdraw his guilty pleas prior to sentencing.  He contends that the trial court should have permitted his withdrawal for the following reasons: (1) he received ineffective assistance of counsel resulting in guilty pleas that were not voluntarily and knowingly submitted; and (2) the trial court failed to properly consider the time frame within which he made his motion or to consider any inconvenience to the State.

Generally, a defendant who submits a guilty plea is not entitled to withdraw the plea as a matter of right.  See State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995), perm. app. denied (Tenn. 1996) ("An accused is not entitled to withdraw a plea of guilty as a matter of right."); State v. Anderson, 645 S.W.2d 251, 254 (Tenn. Crim. App. 1982) ("A defendant does not have the unilateral right to withdraw a guilty plea once submitted where the plea had been voluntarily and intelligently made.").  Furthermore, the plea will not be set aside merely because the defendant experiences a change of heart.  See Ray v. State, 224 Tenn. 164, 170, 451 S.W.2d 854, 856 (1970).  The trial court's decision not to allow a guilty plea to be withdrawn will be upheld on appeal absent an abuse of discretion.  See State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991) (citing Henning v. State, 184 Tenn. 508, 201 S.W.2d 669, 671 (1947)).  Abuse of discretion in this context means there must be no substantial evidence to support the conclusion of the trial judge.  See Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995) (citing State v. Williams, 851 S.W.2d 828, 830-31 (Tenn. Crim. App.), perm. app. denied (Tenn. 1992)).

Under Tennessee law, prior to sentencing a defendant, the trial court may permit the withdrawal of a guilty plea upon a showing "of any fair and just reason."  Tenn. R. Crim. P. 32(f).  When the motion is filed after the imposition of sentence but before judgment is final, the more

---

[4]As the trial court pointed out, the guilty pleas were not without some agreement with the State.  The fact that the defendant would be sentenced as a Range I, standard offender was agreed to, as well as minimum mandatory fines of $2,000 for each felony count, except the Class E felony, for a total fine of $8,000.

demanding standard of showing "manifest injustice" is applied.[5]  The rationale behind the two standards, depending upon when the defendant's motion to withdraw a guilty plea is filed, is based on "practical considerations important to the proper administration of justice."  Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963).  According to the Kadwell court, the inconvenience to the trial court and the prosecution is usually slight prior to sentencing, while the public interest in protecting the rights of the accused to a trial is great.  See id.  The burden of establishing that the plea should be withdrawn is on the accused.  See Turner, 919 S.W.2d at 355.

### A. Manifest Injustice Claim

We first address the defendant's argument that he received ineffective assistance and that his pleas were not knowingly made because those arguments, if true, would establish manifest injustice, thereby meeting the lesser standard of "any fair and just reason," which is the minimum burden the defendant must meet to prevail on this appeal.

Tennessee courts have determined that there has been "manifest injustice" where the guilty plea was entered as a result of "coercion, fraud, duress or mistake," Capri Adult Cinema v. State, 537 S.W.2d 896, 898 (Tenn. 1976); "fear," Swang v. State, 42 Tenn. (2 Cold.) 212, 213-14 (1865); "gross misrepresentation" by the prosecution, id. at 214-15; or the plea was not voluntarily, understandingly, or knowingly entered, State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).  Although the concept of "manifest injustice," in the context of Rule 32(f), is not identical to the requirements of constitutional due process, "[w]here there is a denial of due process, there is a 'manifest injustice' as a matter of law."  State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991) (quoting United States v. Crusco, 536 F.2d 21, 26 (3rd Cir. 1976)).

### 1. Ineffective Assistance of Counsel

The defendant argues that he received ineffective assistance of counsel and that, but for that deficient representation, he would not have entered blind pleas of guilty to the five felony drug charges he faced.  The defendant argues specifically that his attorney failed to properly investigate the Class B felony charge and failed to allow the defendant to review the videotape evidence against him, implying that some evidence that would have exonerated the defendant was overlooked.

The right to assistance of counsel was first recognized by the United States Supreme Court as a constitutional right to the effective assistance of counsel in Powell v. Alabama, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932). Whether based on a Sixth Amendment or due process grounding, "a

---

[5]Rule 32(f) states the following:
> (f) Withdrawal of Plea of Guilty. — A motion to withdraw a plea of guilty may be made upon a showing by the defendant of any fair and just reason only before sentence is imposed; but to correct manifest injustice, the court after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw the plea.

Tenn. R. Crim. P. 32(f).

party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all." Evitts v. Lucey, 469 U.S. 387, 396, 105 S. Ct. 830, 836, 83 L. Ed. 2d 821 (1985). In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997), perm. app. denied (Tenn. 1998) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The U.S. Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of ineffective assistance of counsel. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id., 466 U.S. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test, requiring that the defendant establish (1) deficient representation and (2) prejudice resulting from that deficiency. See id., 466 U.S. at 686, 104 S. Ct. at 2052.

As to the deficient representation prong of the test, the defendant must establish that "the advice given or the service rendered was not within the range of competence demanded of attorneys in criminal cases[.]" Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App.), perm. app. denied (Tenn. 1991). The reviewing court must indulge a strong presumption that the conduct of counsel falls withing the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

As to the prejudice prong of the test, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When a defendant has entered a guilty plea, he must establish a reasonable probability that, but for the errors of counsel, he would not have pleaded guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim"). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996), perm. app. denied (Tenn. 1997).

The evidence showed that on February 9, 1999, just three days prior to the guilty plea hearing, Mr. Parker learned from the district attorney general that indictment #42370 was imminent.[6] The defendant admitted that Mr. Parker met with him on February 9, 1999, and told him that he had reviewed all the State's evidence that same day and that the evidence was overwhelming against the defendant. The defendant does not deny the sale in indictment #42370 but makes much of the fact that Mr. Parker, when testifying at the plea withdrawal hearing, could not state unequivocally that he saw the specific videotape of that sale. Nevertheless, the evidence showed that the State's proof included three videotapes and that Mr. Parker saw three videotapes. Given the similarities in the patterns of the sales, it is not surprising that Mr. Parker could recall, specifically, only that he saw a video with a female coming up to the informant's car. The defendant did not contest the State's description of the .5 gram sale in which a female did, according to the record, come up to the informant's car.

In ruling on the defendant's motion to withdraw his guilty pleas, the trial court stated the following:

> Now Mr. Darnell correctly points out that the presentment [# 42370] came down very close to the plea of guilty hearing, but Mr. Parker indicated he was aware that it was coming; it was anticipated. That Mr. Parker had had discussions with the District Attorney. Mr. Parker also indicated that he had interviewed the witnesses for the State involved, particularly the police officers involved, had received open file discovery. And evidently he was pretty well on top of the investigation and particularly in review, Strickland vs. Washington and those type of things, that it appears to be that he did a reasonable investigation of the background either through Rule 16 discovery motions or actual interviews with purported witnesses. . . . So I can't find the fact the defendant, that Mr. Parker advised the blind plea, that is a plea without recommendation, would be deficient under the total circumstances.

We agree that there is substantial evidence to support the conclusion that Mr. Parker provided effective assistance of counsel in investigating the charges against the defendant and in advising that he enter a blind plea of guilty.

Even if this were not the case, the defendant has failed to show any prejudice. He argues that he took Mr. Parker's advice when he entered a blind plea and that, but for this advice, he would have gone to trial. Yet, the defendant was perfectly willing to refuse Mr. Parker's advice concerning the plea offer of the State. Having refused that offer, the defendant then had only two choices left: to go to trial or enter a blind plea. The defendant never challenged the accuracy of the videotapes. The State's case was clearly overwhelming, as Mr. Parker told the defendant.

---

[6]The indictment is dated February 10, 1998.

While it appears true, from the record, that the defendant had not himself viewed the videotape evidence against him and relied instead on Mr. Parker's description, we note that the trial court, at the hearing on the defendant's motion to withdraw his pleas, took the wise step of providing the defendant and Mr. Darnell, newly appointed counsel, with ample time to look at all of the videotapes. The trial court stated that if, after seeing the tapes and discussing them, the defendant wanted to reopen his proof, the court would allow it. After that viewing, the following exchange took place:

>THE COURT:     All right. I had indicated earlier I'd allow you to reopen your proof if anything was revealed in those tapes you thought was necessary for the Court to consider. Do you wish to reopen your proof, or do you want to let it lay where it is?
>
>MR. DARNELL:     Yeah, lay it where it is. I think I described what was in that particular video.

Apparently, nothing in any of the videotapes was discovered that would alter Mr. Parker's evaluation of the strength of the State's case. The record reveals no rationale in support of the defendant's position that, but for the ineffective assistance of counsel, he would have gone to trial. We conclude that the defendant received effective assistance of counsel.

## 2. Voluntary and Knowing Pleas

Even though we have concluded that there was no ineffective assistance of counsel that might contribute to a finding of manifest injustice, we must now review the underlying facts of the pleas to determine, independently of the ineffective assistance issue, whether the defendant's pleas were voluntary and knowing. See State v. Antonio Demonte Lyons, No. 01C01-9508-CR-00263, 1997 WL 469501, at *11 (Tenn. Crim. App., Nashville, Aug. 15, 1997).

Whether a plea was knowing and voluntary implicates due process rights, and if a defendant's guilty plea is not "equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." Boykin v. Alabama, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 1712 n.5, 23 L. Ed. 2d 274 (1969). Our supreme court has promulgated certain directives for the trial court to follow in determining whether the defendant has entered a guilty plea both voluntarily and knowingly. See State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); see also Tenn. R. Crim. P. 11(c)-(d). In making such determinations, trial courts are instructed to ensure that the defendant is "fully aware of the direct consequences [of his plea] . . . ." Brady v. United States, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472, 25 L. Ed. 2d 747 (1970).[7]

_____

[7]We are aware that our supreme court has recently noted that "[i]t will be difficult, and perhaps impossible, for an intermediate court, reviewing only the record of the plea submission hearing, to make an accurate determination of the knowing and voluntary nature of a plea." State v. Brandon Wilson, No. E1996-00006-SC-R11-CD, 2000 WL 1336633, at *6 (Tenn. Sept. 18, 2000). Nevertheless, the Wilson court stated that a direct appeal based on an alleged Boykin error lies from the denial of a Rule 32(f) motion, as is the case here. We, therefore, address the issue of the

(continued...)

-8-

The defendant argues that he did not understand the seriousness of a Class B felony and that he did not understand how a "blind plea" worked, making his guilty pleas unknowing. As to the defendant's argument that he did not understand the seriousness of a Class B felony or how a blind plea worked, the trial court was not persuaded but noted instead the following:

> Mr. Maxwell claims he didn't understand a lot, but the Court finds some problem with the credibility of Mr. Maxwell in that regard considering the fact that the Court, under Rule 11, Mackey vs. State, has to ask so many questions. And I think that I substantially complied with Rule 11 in Mackey and Boykin in the plea of guilty hearing; probably went beyond that.

The trial court presided over a scrupulously thorough and complete plea submission hearing. The trial court explained each felony count and exactly what the blind plea meant. Although the defendant, whom Mr. Parker described as "articulate," questioned the trial court on points of law such as his right to confrontation and mandatory process, he never questioned the trial court as to the sentence range for a Class B felony, testifying at the plea withdrawal hearing that he knew it carried an eight- to twelve-year sentence for a Range I, standard offender.

We note, as did the trial court, that the State made a plea bargain offer to the defendant of sixteen years, which he refused on February 12, 1999, the day of his guilty plea hearing, ignoring his attorney's advice, because he felt that was "a whole lot of time for me." Also, the defendant has accumulated a fairly extensive juvenile record, including convictions for theft, assault, and sexual battery, as well as two assault charges as an adult, heard in Kingsport General Session Court. So, although it is technically correct that the defendant, as he stated in his motion for withdrawal, has "never been in Criminal Court," he is hardly a novice to the criminal justice system.

We conclude that the defendant has failed to show any manifest injustice, based on either ineffective assistance of counsel or Boykin/Mackey errors, requiring that he be allowed to withdraw his guilty pleas.

### B. Fair and Just Reason Claim

The defendant next argues that there were fair and just reasons requiring that he be allowed to withdraw his guilty pleas. The defendant, having entered guilty pleas in open court on February 12, 1999, wrote to the trial judge within days of his pleas, stating the following:

---

[7](...continued)
voluntary and knowing nature of the guilty pleas as properly before this court, noting that the record on appeal includes not only the plea submission hearing but also the guilty plea withdrawal hearing and the sentencing hearing, allowing us to make an accurate determination concerning the voluntary and knowing nature of the defendant's plea submission, as well as the effectiveness of counsel.

I entered a guilty plea in your court Feb. 12, 1999 to the charge of selling cocaine. I have never been in Criminal Court and my attorney did not make it clear to me the serioness [sic] of my charge and I request that you let me withdraw my guilty plea and appoint a different attorney to represent me in a jury trial.

The handwritten request was, according to the defendant, written as soon as he returned to confinement after the plea hearing. It was notarized on February 14, 1999, and filed on February 19, 1999. An amended version was filed on May 21, 1999. Because the motion to withdraw his guilty pleas was filed prior to sentencing, the minimum applicable standard to be met by the defendant is the less stringent standard of "any fair and just reason."

What constitutes a showing of "any fair and just reason" is not specifically set out in the Tennessee Rules of Criminal Procedure, but this court has relied on factors determined by the Court of Appeals for the Sixth Circuit to be relevant to such an analysis. See State v. Antonio Demonte Lyons, No. 01C01-9508-CR-00263, 1997 WL 469501, at *12 (Tenn. Crim. App., Nashville, Aug. 15, 1997) (citing United States v. Alexander, 948 F.2d 1002, 1003 (6th Cir. 1991)). While Tennessee courts are not bound by federal rules, "there is merit in uniformity and we may consider them for guidance." State v. Newsome, 778 S.W.2d 34, 36 (Tenn. 1989) (citations omitted).

In determining what factors the district courts should consider when a defendant seeks to withdraw a guilty plea prior to sentencing, the Sixth Circuit in United States v. Alexander drew on an earlier decision, United States v. Spencer, 836 F.2d 236, 238 (6th Cir. 1987), in which the court discussed in detail five factors relevant to the "fair and just reason" analysis. See Alexander, 948 F.2d at 1003-04. Those factors are:

> 1. The length of time between the entry of the guilty plea and the filing of the motion to withdraw it;
>
> 2. Why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings;
>
> 3. Whether the defendant has asserted and maintained his innocence;
>
> 4. The circumstances underlying the entry of the plea of guilty, the nature and background of the defendant, and whether the defendant has admitted guilt;
>
> 5. Once the defendant has established a fair and just reason, whether the prosecution will be prejudiced should the plea be withdrawn.

See Spencer, 836 F.2d at 239-40.

First, the defendant argues that the trial court failed to consider the time period in which the defendant filed his motion. The defendant relies on Spencer, for the proposition that a "swift change of heart is itself strong indication that the plea was entered in haste and confusion." 836 F.2d at 238 (quoting Notes of Advisory Committee on Rules, Federal Criminal Code and Rules 32(d) (West 1987)).[8] The defendant also relies on United States v. Roberts, 570 F.2d 999, 1008 (D.C. Cir. 1977) (citing Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963)), for the proposition that "courts look with particular favor on 32(d) motions made . . . within a few days after the initial pleading."

Although the trial court, in denying the defendant's motion, did not specifically refer to the speed with which the defendant moved to withdraw his guilty pleas, this evidence was before the court. The defendant testified at the plea withdrawal hearing that he wrote to the trial judge asking to withdraw his motion on "[t]he day I entered the blind plea. The same day."

The trial court did consider the remaining relevant factors, specifically the fact that the defendant never denied any of the sales. The defendant agreed to the facts as set out by the State at both the guilty plea hearing and the sentencing hearing. In fact, there was a discussion concerning inaccuracies in the presentencing report at the sentencing hearing, and the trial court recessed to give Mr. Darnell and the defendant an opportunity to review the facts as presented by the State at the guilty plea hearing.[9] The following exchange took place at the sentencing hearing:

> THE COURT: We completed our recess in the case of State vs. Patrick Maxwell. Mr. Maxwell was present before; I failed to note that. He's also present at this time with his attorney, Mr. David Darnell. Mr. Darnell, you had, the State had previously suggested that the Court disregard the scenario of facts contained in the presentence report and that the Court consider the stipulations entered into by the parties at the guilty plea hearing. Is that agreeable to you, or do you object to that?

---

[8]That language is as follows:

> Although the terms "fair and just" lack any pretense of scientific exactness, . . . guidelines have emerged in the appellate cases for applying this standard. Whether the movant has asserted his legal innocence is an important factor to be weighed, as is the reason why the defenses were not put forward at the time of original pleading. The amount of time which has passed between the plea and the motion must also be taken into account. A swift change of heart is itself strong indication that the plea was entered in haste and confusion. . . . By contrast, if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force.

Notes of Advisory Committee at 110 (citations omitted).

[9]A transcript of the February 12, 1999, guilty plea hearing was included as an exhibit to both the plea withdrawal hearing and the sentencing hearing and is part of the record on appeal.

MR. DARNELL:     That's agreeable, your Honor.

The defendant failed to raise any objections or present any grounds for withdrawal of his pleas during the guilty plea proceedings. Nothing in the defendant's nature or background, which includes an opportunity to pursue a post-secondary education, supports the defendant's withdrawal of his pleas.

The defendant also contends that the trial court failed to address the slight impact that withdrawal of his guilty pleas would have on the prosecution and the judicial system. This is a factor that the trial court may consider once the defendant advances and establishes a fair and just reason for allowing the withdrawal. See United States v. Alexander, 948 F.2d 1002, 1004 (6th Cir. 1991) ("The prejudice to the government need not be established or considered unless and until the defendant has established a fair and just reason for vacating his plea."). The defendant has not done so.

The defendant has failed to meet his minimum burden of presenting evidence to establish that any fair and just reason exists for granting the withdrawal of his guilty pleas. We conclude that substantial evidence existed to support the denial of the defendant's motion to withdraw his guilty pleas and that the trial court did not abuse its discretion in so ruling.

### Issue II.  Excessive Sentence

The defendant contends that the trial court imposed an excessive sentence. The sentencing range for a Class B felony drug conviction for a Range I, standard offender is eight to twelve years. The range for a Class C felony drug conviction for a Range I, standard offender is three to six years. The range for a Class E conviction is one to two years. The trial court sentenced the defendant to nine years on the Class B felony; four years on each of the three Class C felonies; and two years on the Class E felony. The Class B felony was ordered to be served consecutively to all other charges, which were ordered to be served concurrently as to each other for an effective sentence of thirteen years. Nine years were ordered to be served in incarceration followed by four years in a community corrections program. The defendant challenges both the length and the consecutive manner of service.

Appellate review of sentencing is *de novo* on the record with a presumption that the trial court's determinations are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; see also Ashby, 823 S.W.2d at 169; State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994). The weight to be afforded any existing enhancement or mitigation factor is left to the trial court's discretion. See Tenn. Code Ann. § 40-35-210, Sentencing Commission Cmts. (noting the statute's purpose of maintaining "judicial discretion necessary to make individualized sentencing determinations"); State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

## A.  Length of Sentences

A portion of the Sentencing Reform Act of 1989, codified at Tennessee Code Annotated Section 40-35-210, establishes specific procedures to be followed by the sentencing court. At the time of the defendant's sentencing hearing in 1999, this section of the code provided that the minimum sentence within the range was the presumptive sentence for Class B, C, D, and E felonies. If there are enhancement and mitigating factors, the trial court must start at the presumptive sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors.

The record reflects that the trial court considered the evidence heard at the guilty plea hearing, including both parties' stipulation to facts; the evidence heard at the sentencing hearing, including testimony of the defendant's sister, grandmother, and the defendant himself; the presentence report; the statements of counsel; the nature of the criminal conduct; and the principles of sentencing.

In sentencing the defendant, the trial court applied the following enhancement factors:

> (1)  The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; . . .
>
> (8)  The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; . . .
>
> (13) The felony was committed while on any of the following forms of release status if such release is from a prior felony conviction:
> . . . .
>      (C) Probation; . . .
>
> (20) The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. . . .

Tenn. Code Ann. § 40-35-114 (1), -(8), -(13), -(20) (1997).[10]

The defendant challenges only the application of factor (13). The State agrees that this factor was erroneously applied because the defendant was not on release "from a prior felony conviction." We agree. Nevertheless, the fact that fewer factors can be applied appropriately than the number originally applied by the trial court does not mean that the length of the sentence should automatically be reduced. See State v. Hayes, 899 S.W.2d 175, 186-87 (Tenn. Crim. App. 1995). The trial court made it clear that it relied to the greatest degree on the defendant's past criminal history. The trial court stated, "The most serious factor of all of them, I think, is the defendant's prior record. It tends to outweigh any potential mitigators. The other enhancers, although of some value, are more limited." The trial court noted that the defendant has been in almost constant trouble, either in juvenile court or in court as an adult, and had also violated the law, although uncharged, by his admitted use of marijuana. The trial court also noted the observation of an officer with the Juvenile Probation Office that the defendant was a "likeable young man" who would comply with the rules and be discharged and then be right back in the juvenile court system.

The trial court applied the following factors in mitigation: "(1) The defendant's criminal conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1). The court also considered, under the general factor (13), the defendant's social history, including the fact that his mother died of cancer when he was in his early teens, and he went to live with his grandmother. The trial court also considered the fact that the defendant turned himself in; that the offenses occurred in a reasonably short period of time; and that he had positive personal traits such as intelligence. The trial court declined to accept mitigating factor (3), that substantial grounds existed to excuse or justify the criminal conduct, finding instead that the defendant had, in his grandmother, an honest, decent, and caring guardian who had high hopes that he would succeed in life. The trial court also declined to accept mitigating factor (6), that the youth of the defendant caused him to lack substantial judgment, finding instead that the defendant was wise to the ways of the juvenile system and that his criminal conduct was not an isolated event. The trial court also rejected factor (7), that need motivated the criminal conduct, finding instead that the defendant's grandmother was willing to help him, feed him, and give him a place to live if he would abide by basic rules of conduct such as being home at a reasonable hour.

We conclude that, although enhancement factor (13) was not appropriately applied, the trial court appropriately applied the remaining enhancement and mitigating factors. Therefore, the length of each sentence is affirmed.

## B. Manner of Service of Sentences

The defendant further argues that his sentences should all be served concurrently and not in confinement. Tennessee Code Annotated Section 40-35-115 sets out the considerations to be

---

[10] The trial court appropriately declined the State's request to apply factor (2), that the defendant was the leader in the commission of the offense.

followed by the sentencing court in determining whether multiple convictions should be served concurrently or consecutively. The sentencing court may order sentences to be served consecutively if it finds, by a preponderance of the evidence, that any one of seven factors applies. Tennessee Code Annotated Section 40-35-103 sets out the considerations for sentences involving confinement.

Here, the trial court based its determination as to the consecutive nature of the defendant's sentences on the following factors: "(2) The defendant is an offender whose record of criminal activity is extensive;" and "(6) The defendant is sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(2), (6). The defendant argues that his criminal history consisted primarily of juvenile offenses, which he characterized as "misdeeds as a teenager." The defendant further argues that his adult charges were all brought by the same person, his girlfriend, who never chose to end their relationship, in spite of these incidences of domestic violence. The defendant does not challenge the application of factor (6), and the record supports this factor.

As to the need for the defendant to serve some time in confinement, the trial court stated the following:

> All right. All right, now the first nine years you'll have to serve; be given credit for time served on that nine year sentence. You can be seated. You can sit down if you want to. Then the last four years you'll be on Community Corrections. That's a tough program, but what they do they reintegrate you back into the community. It's like a halfway house. You live there, you go out and work in the day, if you don't have transportation, they get you transportation, let you get your life together and get used to working and that type of thing.

Although the trial court failed to state specifically on the record why confinement was appropriate, it is clear from a review of the entire record that the trial court placed great emphasis on the fact that the defendant had a lengthy history of criminal conduct, especially given his youth, and that repeated efforts at rehabilitation had failed. We cannot say that the trial court abused its discretion in ordering consecutive sentences or in finding confinement of the defendant necessary based on his history of criminal conduct and the failure of less restrictive measures of punishment.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty pleas under Tennessee Rule of Criminal Procedure 32(f). We also conclude that, although one enhancement factor was erroneously applied, the record supports the length and manner of service of the sentences. We affirm the convictions and sentences.

_____
ALAN E. GLENN, JUDGE