IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2012

## TIMOTHY L. ROSE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
No. S56246     Robert H. Montgomery, Jr., Judge

**No. E2011-02384-CCA-R3-PC - Filed July 6, 2012**

Seeking relief from the Sullivan County Criminal Court's dismissal of his petition for post-conviction relief from his 2008 conviction of attempted aggravated robbery, Timothy L. Rose appeals and claims that his plea of guilty to the conviction offense is invalid because it was the product of ineffective assistance of counsel and was unknowingly and involuntarily made. The record, however, supports the post-conviction court's findings and its denial of post-conviction relief. For that reason, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Stephen M. Wallace, District Public Defender; and Andrew Kennedy, Assistant Public Defender, for the appellant, Timothy L. Rose.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Barry Staubus, District Attorney General; and Joseph E. Perrin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On February 6, 2009, the petitioner, Timothy L. Rose, filed a petition for post-conviction relief from his June 16, 2008 guilty-pleaded, Sullivan County Criminal Court conviction of attempt to commit aggravated robbery for which he was sentenced to 14 years in confinement as a persistent offender. The petition alleged that his guilty plea was not voluntarily or knowingly made and was the product of the ineffective assistance of trial counsel.

By order entered on February 9, 2009, the post-conviction court ordered that the petitioner would have 15 days in which to amend his petition to meet the statutory requirements for post-conviction petitions. When he failed to do so, the court entered an order on March 11, 2009, dismissing the petition. On April 9, 2009, the petitioner filed a notice of appeal. On appeal, this court remanded the case to the post-conviction court to determine whether the petitioner had received a copy of the February 9, 2009 order. In response, the post-conviction court supplemented the record with an order finding that the petitioner did not receive a copy of the February 9 order. In view of this supplement and the State's concession that the March 11, 2009 order dismissing the post-conviction petition must be vacated, this court vacated the dismissal of the petition and remanded the cause to the post-conviction court for resumption of the post-conviction proceeding.

On remand, the post-conviction court appointed counsel; the petitioner, through counsel, amended his petition; and the State filed its response. The court conducted an evidentiary hearing on March 14, 2011.

In the hearing, the petitioner testified that he engaged counsel to represent him in criminal court in September 2007 and that he pleaded guilty on June 16, 2008. He testified that, during the interim, he met with counsel twice. He said that counsel sent him three letters. He testified that he told counsel in April, May, or June 2008 about "what . . . needed to be done," including to "get . . . witnesses, get 911 records, phone records from the house that this occurred at, get statements from [the petitioner's] witnesses." He stated that the witnesses he wanted to call were Joe Hamilton and Karen Manis and that he wanted the records of telephone conversations between Daniel Wade and Chaka Poland. He testified that he told trial counsel to interview the State's witnesses.

The petitioner testified that he met with counsel on Saturday, June 14, 2008, and that counsel told him that a private investigator was needed to interview Mr. Hamilton and Ms. Manis. Later in the afternoon of June 14, the petitioner returned to counsel's office and met with counsel and an investigator. The investigator told the petitioner that Mr. Hamilton and Ms. Manis were incarcerated in the Sullivan County Jail, and that after talking with them, the investigator learned that neither prospective witness had anything to say about the petitioner's case.

The petitioner testified that he next spoke with counsel on Monday morning, June 16, 2008, the day of the scheduled trial. He said that counsel told him that he had a 20 percent chance of winning the case and that he would "probably" receive two consecutive 15-year sentences.

The petitioner recounted that counsel had not previously discussed defense

strategy with him and had told him that he should not testify because of his prior convictions. He testified that, in response to the probability of a 30-year effective sentence, he told counsel to solicit a plea offer. He testified that he received a 14-year sentence following a sentencing hearing.

The petitioner further testified that his trial counsel should have subpoenaed Jennifer Bowen and that he believed that Ms. Bowen could have discredited any testimony from Ms. Poland.

On cross-examination, the petitioner acknowledged that his preliminary hearing counsel furnished him with copies of witnesses' statements. He also acknowledged that, in December 2007, he told the criminal court judge that he did not wish to accept the State's plea offer and that the judge told him that if the case were set for trial, the opportunity to accept the offer would expire. The petitioner said he indicated to the court that he wanted a trial. He acknowledged that the trial court informed him that he was charged with three Class C felonies and that the punishment on each ranged from 10 to 15 years at 45 percent. He stated that he did not recall that the trial judge told him that his sentences could run consecutively for a potential effective sentence of 45 years.

The petitioner agreed that he might have received one letter from trial counsel in which counsel urged the petitioner to contact counsel. He further agreed that the private investigator retained by his counsel interviewed Mr. Hamilton, Ms. Manis, and the victims, Lisa and Robert Lingerfelt.

The petitioner acknowledged that on June 16, 2008, he submitted a best interest guilty plea. The plea agreement called for the dismissal of two of the three charges pending against the petitioner. He testified that he did not recall the trial court's explaining the elements of the conviction offense, attempted aggravated robbery. He stated that he told the trial court in the submission hearing that he was not under the influence of alcohol, narcotics, or medication and that he understood the plea, including the imposition of a Range III sentence. He agreed that he had waived several rights as detailed in the plea agreement papers, including the right to jury trial and to cross-examine prosecution witnesses. He said that he informed the judge that the plea was not the result of force or threats and that he believed the plea to be in his best interest. He testified that he indicated no complaints about his counsel because "at the time, [he] didn't know better."

The petitioner further acknowledged on cross-examination that his prior criminal record was extensive and involved prior experience in entering guilty pleas, undergoing sentencing hearings, and utilizing the services of legal counsel.

The petitioner, upon further questioning, agreed that "the only thing [trial counsel] . . . did not do that [he] wanted him to do was getting the phone records."

On redirect examination, the petitioner testified that, after he was convicted and was placed in the Department of Correction, he received a letter from Joe Hamilton in which Mr. Hamilton denied having been interviewed by the defense's private investigator. The petitioner testified that Mr. Hamilton "could have helped prove that [the petitioner] was invited into the house besides barging into the house . . . or forced entrance."

Trial counsel testified that he had been licensed to practice law since 1967 and had practiced continuously from the same location since that time. He testified that he had handled many criminal cases including many major felony jury trials. He testified that the petitioner retained him in September 2007. Counsel said he reviewed "thoroughly" the discovery materials, including the statements of all of the witnesses, three photographic lineup arrays in which the petitioner had been identified by witnesses, and the petitioner's local criminal history. He testified that he discussed the discovery information with the petitioner "on more than one occasion" and that he "went over" the elements of the charged offenses with the petitioner.

Counsel testified that he had concerns about the case because the petitioner did not deny being present during the commission of the charged offenses and because "even witnesses he wanted to put on caused concern" in that they inculpated the petitioner. He relayed his concerns to the petitioner.

Counsel stated that in December 2007, the petitioner indicated to the trial court that he did not wish to accept the pending plea offer and wanted to go to trial. Counsel said he would not have recommended trial "based on what the State had offered and based on what [counsel] knew about the case and based on what these witnesses" had said.

When asked whether counsel had difficulty contacting the petitioner, counsel testified:

> I'm available. I've spent my whole life practicing law, probably too much of it, but I work seven days a week and it's sort of disturbed me for the fact that the first day I saw him . . . and he was referred to me by a client of mine that I've represented for many, many years, . . . and I knew [the petitioner] . . . worked for [that client] as a roofer contractor and communication between an attorney and his client is very important and I knew that and he worked hard. I think [the petitioner] worked hard .

-4-

. . but I stressed to him . . . I'd meet him any time, weekend, Saturday, Sunday, whenever.

Having difficulty getting a conference with the petitioner, counsel wrote letters to the petitioner urging him to write his account of facts underlying the charges. Counsel introduced into evidence copies of letters he sent to the petitioner on October 2, November 8, December 17, 2007, and May 27, 2008. Counsel testified that he also tried calling the petitioner and that he contacted the petitioner's employer as a means of reaching the petitioner.

Counsel further testified that his investigator located Joe Hamilton in jail and took a statement from him that "put [the petitioner] there at the scene of the crime." Counsel stated that the statement was not helpful, although Mr. Hamilton indicated that he did not see a gun in the house because he was outside in a vehicle. Counsel testified that, nevertheless, he subpoenaed Mr. Hamilton and Ms. Manis to testify at trial. He testified that Ms. Manis' statement to the investigator "confirmed basically" her statement as provided in the discovery materials. Counsel said that his investigator also interviewed the Lingerfelts, whose statements to the investigator were consistent with their earlier statements. Counsel had also learned that the petitioner's employer had gone to one of the prosecution witnesses and "tried to . . . get them to change their story."

Counsel testified that he was prepared for trial even though he thought that the petitioner had a "strong" likelihood of conviction. He said that the petitioner made the decision to accept a best interest plea and that, although the petitioner "wasn't happy about it," the petitioner knew "what these witnesses were going to say." Counsel added, "We could have gone to trial because we had, our witnesses were here and we could have gone to trial and that was his decision." Counsel denied that he in any way coerced the petitioner to plead guilty.

Counsel stated that the plea agreement called for the dismissal of two counts. He testified that he went over the agreement with the petitioner. He said that the petitioner knew that alternative sentencing was "impossible," leading to a decision to waive alternative sentencing. Counsel testified that the petitioner understood the sentencing possibilities.

Counsel testified that he did not recall a "911 conversation or [an issue] about a tape." He did not recall the name Jennifer Bowen.

On cross-examination, counsel stated that he did not recall whether he met with the petitioner prior to the December 2007 court date. He agreed that the State's plea offer that expired upon the December 2007 hearing called for a nine-year sentence. Counsel

testified that the petitioner "turned it down." Counsel agreed that he really learned nothing new about the case after the December 2007 court date. Counsel said he informed the petitioner that if he went to trial and lost he would not get a result as good as the State's original offer.

Counsel testified that he would have met with the petitioner earlier than June 14, 2008, to prepare for trial but was unable to do so because "he didn't get with me."

The post-conviction court entered its findings and its order denying post-conviction relief on October 17, 2011. The court accredited trial counsel's testimony "that he was prepared to go to trial and had done all that he could do to prepare for trial" despite that counsel "had difficulty obtaining the cooperation of the petitioner," who was free on bond pending the trial. The court further found that "the petitioner entered his plea . . . knowingly and voluntarily." The court noted that the agreement to dismiss two counts negated the possibility of consecutive sentencing. The court held that the petitioner failed to carry his burden of proof and affirmatively found that trial counsel "was in no way deficient."

Now on appeal, the petitioner claims that trial counsel was ineffective and that his ineffectiveness and the circumstances prevailing on June 16, 2008, resulted in his unknowing and involuntary guilty plea. He stresses that because counsel learned nothing new about the case between the day in December 2007 that the nine-year plea offer was rejected and the date of the scheduled trial, June 16, 2008, counsel should have urged the petitioner's acceptance of the plea to a nine-year sentence.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930,

936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Strickland*, 466 U.S. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Both claims of ineffective assistance of counsel and involuntary guilty plea are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In the present case, trial counsel's testimony supports the post-conviction court's conclusions that counsel did not render deficient representation and that the petitioner made his guilty plea knowingly and voluntarily. The evidence does not preponderate against the findings that support those conclusions. Because the post-conviction court accredited this legally adequate testimony, the petitioner is entitled to no relief on appeal.

We know that the petitioner posits that had his counsel's advice that prompted the blind guilty plea on June 16, 2008, been forthcoming on December 14, 2007, he would have pleaded guilty and accepted the nine-year sentence in December. However, not only did counsel's accredited testimony show that the petitioner knew the circumstances and risks of the case when he rejected the nine-year plea deal, we also recognize the impetus and sense of urgency that is naturally supplied by the presence of a jury and the imminence of trial. For that reason, when on the brink of trial, any petitioner may warm to a plea offer that would have been abhorrent six months earlier. The law, however, does not disdain as infirm any such Sword-of-Damocles motive. "The entry of a plea of guilty to avoid a . . . risk of greater punishment does not, standing alone, make a plea involuntary." *Parham v. State*, 885 S.W.2d 375, 381 (Tenn. Crim. App. 1994) (citing *Capri Adult Cinema v. State*, 537 S.W.2d 896, 898 (Tenn. 1976) (other citations omitted)); *see also Brady v. United States*, 397 U.S. 742, 748-50 (1970); *Hicks v. State*, 983 S.W.2d 240, 248 (Tenn. Crim. App. 1998).

Accordingly, the criminal court's denial of post-conviction relief is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE