IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 5, 2019

**DERRICK WADE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-17-325      Kyle Atkins, Judge**

**_____**

**No. W2019-00432-CCA-R3-PC**

**_____**

Pursuant to a plea agreement, the Petitioner, Derrick Wade, received an effective thirty-year sentence for his convictions for two counts of second degree murder, two counts of especially aggravated robbery, and attempted first degree murder. The Petitioner filed a timely post-conviction petition, which was denied after a hearing. On appeal, the Petitioner asserts that he received the ineffective assistance of trial counsel and that his pleas were not entered knowingly or voluntarily because he was under duress due to the circumstances of his plea. After a thorough review of the record, we discern no error and affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Alexander D. Camp, Jackson, Tennessee, for the appellant, Derrick Wade.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody Pickens, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Petitioner's convictions stem from the murder of two victims and the wounding of another by gunfire during a home invasion and robbery committed by the Petitioner with his cousin and co-defendant, Johnny Lorenzo Wade. *See State v. Johnny*

*Lorenzo Wade*, No. W2017-00933-CCA-R3-CD, 2018 WL 3414471, at *1 (Tenn. Crim. App. July 13, 2018) (affirming a sentence of life plus forty years for the co-defendant charged with the same offenses), *perm. app. denied* (Tenn. Nov. 15, 2018). The Petitioner was charged with one count of first degree, premeditated murder; two counts of felony murder; two counts of especially aggravated robbery; attempted first degree murder; and aggravated assault.[1]

## Plea Hearing

At the plea hearing, the prosecutor noted that the State had filed a notice seeking a sentence of life without parole. According to the prosecutor's recitation of facts, on January 15, 2013, the Petitioner and co-defendant, both armed with handguns and intending to commit robbery, entered the Jackson residence of Mr. Johnny Shivers, Ms. Chermaine Owens Shivers, Mr. Markel Owens, who was Ms. Shivers's adult son, and Mr. Jonathan Shivers, who was the teenage son of Mr. Shivers and Ms. Shivers.[2] The prosecutor stated that Mr. Johnny Shivers and Mr. Owens resisted the attack and were both shot and killed. Ms. Shivers was shot and wounded, as was the Petitioner. After the culprits fled the home with the money they had taken, the Petitioner's girlfriend drove them to a hospital in Memphis, where the Petitioner was treated for a gunshot wound and ultimately arrested.

At the plea hearing, the Petitioner agreed that the prosecutor's recitation of facts was substantially correct. He confirmed that he understood the charges to which he was entering guilty pleas and that he understood he was pleading outside of his range in exchange for reduced charges. He stated that he understood he had a right to persist in a plea of not guilty, to have a jury trial, to have the assistance of counsel at trial, to confront witnesses, to refrain from incriminating himself, to appeal, and to have the assistance of counsel on appeal. He understood that he was giving up these rights in entering a guilty plea and understood that by pleading guilty, he was admitting he had committed the crimes. He stated he was entering his plea freely and voluntarily and that he had not been forced, pressured, or threatened to plead guilty or induced to do so with promises outside the plea agreement. The Petitioner agreed that he had "gone over this case in detail" with his attorney, and asked by the trial court if he had any further questions for his attorney or the court, the Petitioner responded, "No, sir. We talked about it all." The Petitioner confirmed he had discussed the charges, the factual basis of the charges, the strengths and

---

[1] The indictments are not included in the record, but the prosecutor and trial court reviewed the Petitioner's charges at the plea hearing.

[2] We take the spellings of the victims' names and their ages from the appellate opinion filed in the co-defendant's appeal. *Johnny Lorenzo Wade*, 2018 WL 3414471, at *1.

weaknesses of the case, and the advantages and disadvantages of proceeding to trial. He had prior criminal history and had pled guilty to a prior offense. He confirmed he was satisfied with counsel's representation.

Neither the plea agreement nor the judgment forms are part of the record on appeal. According to the transcript of the plea hearing, the trial court merged the alternative charges for the homicide of Mr. Johnny Shivers into one conviction for second degree murder. The Petitioner also pled guilty to the second degree murder of Mr. Owens and to the especially aggravated robberies of both Mr. Johnny Shivers and Mr. Owens. The trial court merged the charges of attempted first degree murder and aggravated assault into one conviction for attempted first degree murder. The Petitioner was sentenced to serve thirty years for each count of second degree murder, thirty years for each count of especially aggravated robbery, and thirty years for attempted first degree murder. The attempted first degree murder was to be served with a thirty-five percent release eligibility, and the remaining convictions were to be served with a one hundred percent release eligibility. All of the sentences were to run concurrently.

**Post-Conviction**

The Petitioner filed a timely post-conviction petition, was appointed counsel, and filed an amended petition alleging that trial counsel did not communicate with him and did not prepare adequately for trial and that his pleas were not knowing and voluntary because he was pressured into accepting the plea agreement by the circumstances surrounding the plea.

At the post-conviction hearing, the Petitioner testified that trial counsel only met with him two or three times over the course of two years. He asserted that trial counsel did not discuss the strengths or weaknesses of the case or develop a defense strategy and instead informed the Petitioner, "Well, they know you did it." He denied that he received a mental health evaluation.

The Petitioner said that trial counsel unexpectedly moved to withdraw from representing the Petitioner days before trial but the trial court denied the motion. The Petitioner stated that he felt coerced into taking the plea agreement by trial counsel's attempt to withdraw. However, he acknowledged that trial counsel only moved to withdraw because, in a conversation with the Petitioner's mother, the Petitioner had threatened to "slap" trial counsel.

The Petitioner essentially testified that he felt the sentence was harsh and that he was innocent. He elaborated that his cousin and co-defendant was the one who actually pulled the trigger during the robbery. He acknowledged that he had been informed that

under the theory of criminal responsibility, his participation in the robbery would make him culpable for the subsequent homicides and shooting. He agreed that in his statement, he admitted entering the house with a gun and with his face covered for the purpose of committing a robbery, but he asserted that the written statement did not reflect what he actually told law enforcement. At the hearing, he acknowledged entering the home with a gun but denied intending to commit a robbery. He acknowledged that he used a false name when he was admitted to the hospital in Memphis.

The Petitioner stated he was under stress and duress when he accepted the plea offer because he was facing a very harsh sentence at trial. He testified that he had one to two days to consider the offer and spoke with his family about it. The Petitioner no longer wanted to plead guilty but wanted to go to trial.

Trial counsel stated that he met with the Petitioner over twenty times and that an Assistant District Public Defender and an investigator likewise worked on the Petitioner's case. He agreed that two to three meetings for a case of this magnitude would not have been sufficient. Trial counsel prepared for trial by having both a neuropsychologist and psychiatrist evaluate the Petitioner for competency and to prepare mitigation and by filing various motions, including one to suppress the Petitioner's statement. The Petitioner had given an inculpatory statement in which admitted his involvement in the crime and stated that he did not fire because his weapon jammed. The co-defendant was the actual trigger-man who shot the victims and also inadvertently shot the Petitioner. Trial counsel stated that the defense strategy would have been to attempt to convince the jury to convict the Petitioner of a lesser-included offense by focusing on the fact that the co-defendant fired the actual shots. However, trial counsel believed there was a strong chance that the Petitioner could be convicted of felony murder.

Plea negotiations were ongoing throughout the pendency of the charges. The Petitioner had initially sought an agreement for a sentence of twenty-five years, and he asked for a twenty-eight-year sentence immediately prior to trial. Trial counsel and the Petitioner discussed the thirty-year plea offer from the State three to four days prior to the scheduled trial, and the plea was entered on the day trial was set.

Trial counsel confirmed that he moved to withdraw from the case a few days prior to trial. He explained that he was notified about the threat the Petitioner had made, consulted the Board of Professional Responsibility, and moved to withdraw on their recommendation. When the court denied the motion to withdraw, trial counsel assured the Petitioner he would continue to try to represent him to the best of his ability.

The post-conviction court denied relief. The court credited the testimony of trial counsel in general and in particular regarding his numerous meetings with the Petitioner

and his efforts to prepare for trial. The post-conviction court noted that the Petitioner had not presented evidence of any strategy which trial counsel could successfully have pursued, and it concluded that trial counsel had not performed deficiently and that the Petitioner had not demonstrated any prejudice. The post-conviction court likewise found that the plea hearing demonstrated that the Petitioner's pleas were entered knowingly and voluntarily and that he understood the rights he was waiving. The Petitioner appeals.

## ANALYSIS

The Petitioner asserts that he is entitled to a new trial because his trial counsel provided deficient representation, rendering his pleas involuntary, and because his pleas were not knowing and voluntary due to the circumstances surrounding the pleas. To obtain relief from a conviction, a post-conviction petitioner must establish that his conviction or sentence is void or voidable due to the abridgment of any constitutional right. T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witnesses, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of fact and law reviewed de novo. *Id.* Whether a guilty plea is knowing and voluntary is likewise a mixed question of law and fact reviewed de novo. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010).

Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To obtain relief under a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

"Establishing deficient performance requires showing 'that counsel's representation fell below an objective standard of reasonableness,' which standard is measured by 'professional norms' prevailing at the time of the representation." *Garcia v. State*, 425 S.W.3d 248, 256-57 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As

long as counsel's representation was "'within the range of competence demanded of attorneys in criminal cases,'" counsel will not be deemed to have performed deficiently. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Deficient performance requires a showing of errors so serious that "'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

In determining prejudice, the reviewing court must decide if there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

The *Strickland* standard for determining whether a petitioner received the ineffective assistance of counsel applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Missouri v. Frye*, 566 U.S. 134, 147 (2012). In order to show prejudice in the context of a guilty plea, the petitioner must demonstrate "'a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff v. State*, 297 S.W.3d 208, 217 (Tenn. 2009) (quoting *Hill*, 474 U.S. at 59). The inquiry should focus on whether any alleged deficiency affected the outcome of the plea process. *Id.*

The Petitioner here claims that his pleas were not entered knowingly or voluntarily based both on counsel's alleged deficiency and on the circumstances surrounding his pleas. In entering a guilty plea, the accused simultaneously waives several constitutional rights. *Blankenship v. State*, 858 S.W.2d 897, 903 (Tenn. 1993) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). Accordingly, a guilty plea must be entered voluntarily, knowingly, and intelligently if it is to comport with due process. *Lane*, 316 S.W.3d at 562. A plea is not voluntary if it results from "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats....'" *Blankenship*, 858 S.W.2d at 904 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)). This court considers the totality of the circumstances, including evidence at post-conviction, to determine whether a guilty plea was entered voluntarily, knowingly, and intelligently. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). In particular, the court may consider:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available

to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904.

The Petitioner asserts on appeal that trial counsel was deficient in not alerting him that he was waiving his right to appeal and that his pleas were accordingly not knowing or voluntary. This claim was never raised before the post-conviction court; there was no testimony offered on the issue at the post-conviction hearing; and the post-conviction court, not having been presented with the issue or any relevant facts, made no finding regarding the issue. We note that the plea hearing reflects that the Petitioner affirmed multiple times that he was aware he was waiving his right to appeal. "As a general rule, this court will not address post-conviction issues that were not raised in the petition or addressed in the trial court." *Brown v. State*, 928 S.W.2d 453, 457 (Tenn. Crim. App. 1996) (citing *State v. Smith*, 814 S.W.2d 45, 49 (Tenn. 1991)); *see Stanley Williams v. State*, No. W2018-01269-CCA-R3-PC, 2019 WL 2407157, at *10 (Tenn. Crim. App. June 7, 2019), *perm. app. denied* (Tenn. Oct. 11, 2019); *David Lynn Jordan v. State*, No. W2015-00698-CCA-R3-PD, 2016 WL 6078573, at *65 (Tenn. Crim. App. Oct. 14, 2016). We conclude that the issue is waived for failure to raise it before the post-conviction court.

The Petitioner also asserts that his attorney's alleged failure to prepare for trial or develop a defense rendered his pleas involuntary. Although the Petitioner asserts duress from trial counsel's alleged deficiencies, the post-conviction court found that trial counsel met numerous times with the Petitioner and conducted extensive pretrial preparations, including obtaining expert evidence. Such factual findings are binding on the appellate court unless the record preponderates against them. *Kendrick*, 454 S.W.3d at 457. We conclude that trial counsel's performance was not deficient. Furthermore, the post-conviction court concluded, and we agree, that the Petitioner failed to demonstrate any prejudice from counsel's alleged failure to develop a defense strategy because he has made no particular allegations regarding what counsel's strategy should have been.

The Petitioner also argues that his pleas were involuntary because he was under duress from the circumstances surrounding his pleas, including the extent of his sentencing exposure, his attorney's attempt to withdraw from representation, and the necessity of making a decision regarding the plea in a short time frame. However, the Petitioner's pleas are not rendered involuntary by the Petitioner's awareness of his potential sentencing exposure. The fact that the Petitioner was "facing trial with the possibility of much … greater terms of imprisonment" is by itself "wholly insufficient to

sustain any suggestion that the guilty plea was 'involuntary' as that term has been used in cases granting relief from such a plea." *Capri Adult Cinema v. State*, 537 S.W.2d 896, 898 (Tenn. 1976); *see Eddie Charles Warlick v. State*, No. W2017-00703-CCA-R3-PC, 2018 WL 672593, at *4 (Tenn. Crim. App. Jan. 31, 2018), *no perm. app. filed* ("Accurately informing the petitioner of the potential sentence does not equate to a threat or an act of coercion…."). Likewise, the fact that the Petitioner had possibly damaged his working relationship with counsel by threatening to assault counsel does not render his pleas involuntary. *See Eddie Charles Warlick*, 2018 WL 672593, at *4 (rejecting the petitioner's claim that his plea was not knowing or voluntary because "a contentious relationship with counsel, standing alone, would not entitle the petitioner to relief"). Finally, the Petitioner had multiple days to consider the plea offer and discuss it with his family prior to accepting it. *See Ricky Butler v. State*, No. M2004-01543-CCA-R3-PC, 2006 WL 2206081, at *6 (Tenn. Crim. App. July 31, 2006) (concluding that the fact that the petitioner was given a plea offer on the morning of trial did not establish that the plea was not knowing or voluntary when the plea hearing and post-conviction hearing showed that the decision was made to avoid a potentially harsh punishment); *Stephen E. Miles v. State*, No. W2005-01465-CCA-R3-PC, 2006 WL 1381596, at *5 (Tenn. Crim. App. May 16, 2006) (concluding that the fact that the petitioner had only thirty minutes to decide whether to take the plea offer did not render the pleas involuntary when the plea hearing demonstrated that he understood the terms of the plea agreement and his charges). The Petitioner's testimony at the plea hearing affirmed that he understood the charges, had discussed his case and the plea offer with his attorney, and had voluntarily made the decision to plead guilty. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). The Petitioner has not demonstrated that his pleas were not knowing and voluntary.

Both in the post-conviction court and on appeal, the Petitioner has asserted the Petitioner wishes to withdraw his guilty plea, citing standards applicable to Tennessee Rule of Criminal Procedure 32(f). Insofar as the issue is raised, we hold that the post-conviction court was correct in its oral ruling that any motion to withdraw the guilty pleas based on manifest injustice was not timely under the Rule. *See* Tenn. R. Crim. P. 32(f)(2) (noting that such a motion may be granted "[a]fter sentence is imposed but before the judgment becomes final"); *State v. Peele*, 58 S.W.3d 701, 704 (Tenn. 2001) (noting that a judgment generally becomes final thirty days after entry and that the trial court loses jurisdiction to amend a judgment at that time).

## CONCLUSION

Based on the foregoing, we affirm the denial of post-conviction relief.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE